**BOND–JOHNSON EXPLORATION, INC., a corporation, Appellant, Cross-Appellee,**

v.

**SCHLUMBERGER TECHNOLOGY CORP., a corporation, Appellee, Cross-Appellant.**

Nos. 77–1049, 77–1050.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted May 11, 1978.

Decided July 31, 1978.

William Scheurich, of Huffman, Arrington, Scheurich & Kihle, Tulsa, Okl. (Charles R. Cox, Tulsa, Okl., with him on brief), for appellant, cross-appellee.

John T. Edwards, of Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, Okl., for appellee, cross-appellant.

Before SETH, Chief Judge, and HOLLOWAY and McKAY, Circuit Judges.

SETH, Chief Judge.

This diversity action was brought by plaintiff, a leaseholder and operator of oil and gas property in Oklahoma. Plaintiff was nearing final completion of a well, and

contracted with defendant to perforate the casing. During this work the perforating gun operated and provided by defendant Schlumberger became lodged in the well and could not be withdrawn by defendant. The plaintiff then undertook the work to remove the gun, and incurred substantial expenses in so doing. During the course of the initial attempts to remove the gun or during the "fishing" the casing was damaged, and the well was flooded.

The complaint advances three theories: fraud, products liability, and negligence. The case went to the jury with instructions on each theory. There were no objections to the instructions.

The case was submitted under Oklahoma's comparative negligence act, 23 O.S.A. 11, with the usual instruction, and with a form of verdict for the jury to enter the percentage of negligence to be attributed to each party. Under the Oklahoma comparative negligence law, the percentages can be applied by the jury under instructions to so make the computation; or, as an alternative method, the trial court can reserve the mathematical application of the percentages and apply them to the dollar figure arrived at by the jury.

The problem arises in this appeal because the jury was not instructed to make the computation by the court, but it may have done so nevertheless. The jury filled in the verdict form to show $93,936.41 as "compensatory" damages to plaintiff, with dashes entered for "consequential or special damages" and dashes entered for "punitive or exemplary damages". Thus an amount was entered only for "compensatory" damages. The form also provided for the comparative negligence element as follows:

"If you find for the plaintiff and against the defendant on the plaintiff's cause of action for negligence, fill in the following two blanks:

"1. We find that the plaintiff's
negligence was (0% – 100%)   40 %
"2. We find that the defendant's
negligence was (0% – 100%)   60 %"

The verdict was read, the jury polled, and it was received without question. There were also no objections to the verdict form. However, some days after trial, the parties by motion asked the trial court to "correct" the verdict. The trial court refused to apply the comparative negligence percentages in the verdict to the dollar figure entered by the jury. The court said it refused to go behind the verdict to decide whether the jury could have found some damages on the other theories of fraud or manufacturer's liability or whether they had already applied the percentages. As to the amount of the verdict the trial court said: "The verdict is vexatious because it is exactly 60% of the total damages designated by the Court as compensatory damages."

The parties had stipulated as to the costs incurred by the plaintiff. One element was the well cost to the perforation stage at $92,750.00, the fishing costs at $63,810.68, and lease acquisition costs of $15,127.42. The jury verdict was thus 60% of the well completion costs and the fishing costs.

There is ample evidence to support a conclusion by the jury that the representative of plaintiff approved the particular model of perforating gun used in the well. The matter was discussed with him before it was used. It is further well established by the record, and by the service contract here concerned, that the plaintiff had sole responsibility and control over the fishing work. This was work conducted after the plaintiff made the decision that the service company could not itself dislodge the gun by using the cable.

It seems reasonable to conclude from the form of the verdict that the jury based its verdict on negligence. The verdict form recites: "If you find for the plaintiff . . . on the plaintiff's cause of action for negligence   . . .." Also the trial court clearly instructed the jury that the comparative negligence aspect of the case applied only to negligence and not to fraud nor to manufacturer's liability. Thus the 40–60 division was on the negligence theory.

As to the application of the percentages, we must conclude that the jury, in the absence of specific instructions by the court as to whether it or the court was to do so,

made the computation itself. As we have seen, under Oklahoma law this could have been done by the jury had it been instructed to do so. We see no error in the jury so acting under these circumstances. The case is unique and the conclusion can be reached as we have done because the costs, on which the damages were to be based, were stipulated. Thus it becomes apparent that the jury applied the percentages to the total of the two cost items submitted by the court—$156,560.68—and computed the 60% at $93,936.41. The arithmetic demonstrates clearly what the jury did. Since it could have done this when so instructed, we again see no error in permitting them to do so in the absence of any instructions as to who was to do it.

We find no error in the treatment of the reservoir damage issue by the trial court.

AFFIRMED.