**GEOSEARCH, INC., Plaintiff-Appellee,**

v.

**HOWELL PETROLEUM CORPORATION, Defendant-Appellant.**

No. 85–2755.

United States Court of Appeals, Fifth Circuit.

June 8, 1987.
Rehearing Denied July 23, 1987.

---

Thomas C. Wright, Miller, Keeton, Bristow & Brown, Houston, Tex., for defendant-appellant.

Timothy T. Read, J. Currie Bechtol, Hutcheson & Grundy, Houston, Tex., for plaintiff-appellee.

Before RUBIN, JOHNSON, and JONES, Circuit Judges.

JOHNSON, Circuit Judge:

The holder of a working interest in an oil and gas well, Geosearch, Inc., sued Howell Petroleum Corporation, the operator of the well and holder of another working interest, for damages resulting from an underground well blowout. Geosearch claimed that Howell misrepresented that its insurance covered Geosearch, so that Geosearch failed to seek a policy that would have covered its losses. The jury agreed. Howell argues on appeal that the trial court erred in (1) not submitting all the elements of negligent misrepresentation to the jury; (2) not submitting the issue of "justifiable reliance," but instead asking the jury an immaterial issue; and (3) refusing to reduce the jury's damages award for Geosearch's comparative negligence. The case is a diversity case, governed by Texas law. For the reasons stated below, we affirm.

## I. BACKGROUND

In November 1980, Howell and Geosearch signed an operating agreement granting Geosearch a working interest in the Pass Fourchon Prospect. The agreement did not require Howell to carry insurance covering Geosearch's interest, although Howell, as operator, did have certain administrative and reporting duties.

On January 12, 1981, a Geosearch employee, Loreen Smith, called Howell Petroleum and spoke to one of its employees, Nagle. During this telephone conversation, which lasted only a few minutes, Nagle told Smith that Howell carried well control insurance that covered Geosearch's interest. Smith scribbled a note of the conversation: "1-12-81 Tom Nagle—Howell Petroleum[:] well control insurance[;] nothing for fishing; stuck drill stem; side tracking unless it had to do with controlling the well." Plaintiff's Exhibit No. 2.

In May 1981, the well had an underground blowout that forced abandonment. A second well was drilled, but turned out to be dry. Geosearch had no insurance to cover its share of the costs for controlling the first well or drilling the second.

Geosearch sued Howell under the Texas Deceptive Trade Practices Act, and for common law fraud and negligent misrepresentation. The court directed a verdict for Howell on the deceptive trade practices claim. The jury, answering special issues, found Howell liable for negligent misrepresentation but not fraud, and set Geosearch's comparative negligence at forty-five percent. The trial court entered judgment against Howell for the full amount of the jury's answer to the damages issue, $218,732.00.

## II. DISCUSSION

### A. *Negligent Misrepresentation*

Howell contends that the district court should have directed a verdict against Geosearch because Geosearch failed to prove two elements of the tort of negligent misrepresentation; alternatively, Howell argues that the court should have submitted these elements to the jury. In order to assess these contentions, we must determine what elements the courts of Texas have held to constitute negligent misrepresentation. Texas courts follow the Restatement (Second) of Torts, section 552 (hereinafter § 552), in imposing liability for "Information Negligently Supplied for the Guidance of Others." *See, e.g., Blue Bell v. Peat, Marwick, Mitchell & Co.*, 715 S.W.2d 408, 411 (Tex.App.—Dallas 1986, no writ); *Great American Mortgage Inves-*

*tors v. Louisville Title Insurance Co.*, 597 S.W.2d 425, 429 (Tex.Civ.App.—Ft. Worth 1980, writ ref'd n.r.e.); *Shatterproof Glass Corp. v. James*, 466 S.W.2d 873, 878 (Tex. Civ.App.—Ft. Worth 1971, writ ref'd n.r.e.) (draft Restatement). Section 552 reads:

(1) One who, in the course of his business, profession or employment, or *in any other transaction in which he has a pecuniary interest*, supplies false information for the *guidance of others in their business transactions*, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) *by the person* or one of a limited group of persons for whose benefit and guidance he *intends to supply* the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a *transaction that he intends the information to influence or knows that the recipient so intends* or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Restatement (Second) of Torts § 552 (1977) (emphasis added).

Because this tort requires less fault than the intentional tort of fraud, the drafters of the Restatement included the emphasized language to limit liability in three ways. *Id.*, Comment (a) at 127–28. On the defendant's end, the supplier of the false information must either be in the business of supplying that sort of information *or* must have a "pecuniary interest" in the transaction to which the information pertains. Section 552(1) and Comment (c). On the receiver's end, the plaintiff must first be either the intended recipient of the information or a known indirect recipient. Section 552(2)(a) and Comment (h). Second, the recipient must use the information in a transaction that the supplier intends to influence or at least knows of. Section 552(2)(b) and Comment (j). *Rosenthal v. Blum*, 529 S.W.2d 102, 104 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.). Howell argues that it should have had a directed verdict, or at least a jury instruction, on all three limiting elements.

In regard to the second two elements, Howell's argument has no merit. There was no dispute at trial that Smith was an employee of Geosearch and that Nagle knew that fact. Section 552(2)(a) becomes an issue only when the direct recipient of false information passes it on to a third party. *See, e.g., Blue Bell*, 715 S.W.2d at 411 (accountant supplied audit to debtor who passed it on to creditor); *Cook Consultants, Inc. v. Larson*, 700 S.W.2d 231 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (surveyor who gave erroneous report to seller of real estate is liable to buyer).[1] As to the third element, the jury *was* asked

---

**1.** This case does not hold, as asserted by the dissent, that negligent misrepresentation applies "only" to persons "holding themselves out to the community as possessing unique skills" but rather that such persons form *one* possible type of defendant. *Cook Consultants*, 700 S.W.2d at 234. The other type consists of those who have a "pecuniary interest" in the relevant transaction. Whether Howell falls within this type is the issue in the instant suit.

Moreover, *Bernard Johnson, Inc. v. Continental Constructors* does not hold, as the dissent states, that "section 552 [is] inapplicable to suits brought by a third party alleging negligent performance of a contract duty." *Bernard Johnson, Inc.*, 630 S.W.2d 365 (Tex.App.—Austin 1982, writ ref'd n.r.e.). Footnote 4 of *Bernard John-*

*son, Inc.*, pointed to by the dissent, cites a case holding that third parties may sue under some circumstances—*Shatterproof Glass Corp*, 466 S.W.2d 873—and other cases holding that a third party may not sue under other circumstances. 630 S.W.2d at 370 n. 4. *Bernard Johnson* is a case involving a contractor who sued an architect for negligently *administering* a construction contract. 630 S.W.2d 365. The case is not analyzed or analyzable as a § 552 case.

Finally, *Bell v. Manning* was a "business, profession or employment" case, not a "pecuniary interest" case, and it was decided on the basis of special considerations involved in the attorney-client relationship. 613 S.W.2d 335, 339 (Tex. Civ.App.—Tyler 1981, writ ref'd n.r.e.).

(Special Issue No. 7, Record Vol. 2 at 5) whether Nagle knew that Geosearch would use the information in making a decision about buying insurance. The jury answered "yes," and that answer was based on sufficient evidence concerning the telephone conversation.

■ The first element presents a more difficult problem. Howell clearly was not engaged in the business of supplying insurance information. Nor was there any factual dispute that Howell had no "pecuniary interest" in Geosearch's insurance purchase but did have such an interest in the drilling of the well. The issue turns on whether this Court should define "transaction" narrowly for section 552 purposes, to include only the insurance purchase that motivated Smith's phone call, or more broadly to cover the drilling venture that linked the two parties and made insurance necessary.

The Texas cases shed a very faint light on where this line should be drawn. One court allowed a retailer-tenant to recover from his shopping center landlord when the landlord stated, falsely, that its insurance would cover tenants for all thefts except shoplifting. *Southwest Craft Center v.*

*Heilner*, 670 S.W.2d 651, 655–56 (Tex.App. —San Antonio [4th Dist.] 1984, writ ref'd n.r.e.). The *Heilner* court does not cite section 552,[2] but the defendant landlord clearly had no "pecuniary interest" in its tenants' insurance. Another court found that an employee stated a cause of action, under section 552, against an insurance company for giving the employee information that led the employee to defer retirement and lose his benefits. *Aetna Life & Casualty Co. v. Lyon*, 576 S.W.2d 114, 117 (Tex.Civ.App.—Texarkana 1978, writ ref'd n.r.e.). The plaintiff in that case would have lost had the court defined the "transaction" as a decision on retirement rather than on insurance.[3] Similarly, a New Jersey court has allowed an employee to recover in a negligent misrepresentation suit against her employer, who misinformed her about her eligibility for a health plan, leading her to suffer loss when a member of her family had an accident. *Berry v. Playboy Enterprises, Inc.*, 195 N.J.Super. 520, 480 A.2d 941 (1984), certification denied, 99 N.J. 231, 491 A.2d 720 (1985). The defendant in that case had a "pecuniary interest" in employing the plaintiff but not in running a health plan. *Id.*[4]

---

2. As the dissent points out, *Heilner* is written in terms of promissory estoppel. We include *Heilner* because its facts bear such a strong resemblance to those of the instant case. Arguably, *Heilner* should have been a § 552 case, because the landlord's representative did not *promise* to buy insurance in the future—he *stated* that insurance was already in place. The same misrepresentation was made here.

3. *Aetna Life and Casualty* holds not only that Texas recognizes the tort of negligent misrepresentation, as the dissent points out, but also that the plaintiff sufficiently alleged the existence of a duty on the defendant's part toward the plaintiff. *Id.* at 117. Aetna could have had no duty toward Lyon unless Aetna's misrepresentation concerned a transaction in which the insurance company had a pecuniary interest as defined in § 552.

4. In *Berry*, the plaintiff, one of the defendant's employees, alleged that her employer was negligent in not telling her that she could immediately enroll in a health benefits plan if she elected salaried status. The plaintiff elected hourly-wage status, her benefits began only after a 90 day waiting period, and her husband incurred serious medical expenses during the 90 day period. *Id.* The trial court granted summary judg-

ment to the defendant-employer, and the New Jersey Superior Court reversed. The appellate court held, not only that New Jersey recognizes a cause of action for negligent misrepresentation, but also that the plaintiff sufficiently alleged a *duty* on her employer's part toward her. In summarizing the factual issues necessitating trial, the *Berry* court did not mention any duty issues:

We find that a factual hearing is required to determine whether as a banquet cook she had an option to choose between benefit plans, (which defendants deny), and if so whether Playboy's agents properly explained Carolyn Berry's benefit options to her, as she contends they existed, and whether she was misinformed of the opportunity to elect salary status with immediate benefits. The actual merit of Berry's claims is, of course, for the trier of fact after development of a full record.

480 A.2d at 945. The New Jersey court had indeed—contrary to the dissent's characterization—"pass[ed] on whether a valid cause of action was present." The issues remaining are factual ones concerning whether the misrepresentation was actually made, whether it was false, and whether it caused the plaintiff's injury. *See also* 480 A.2d at 947 (summarizing the remaining issues for remand).

While the precedents are not as clear as they could be, they caution against drawing an artificial line around one incident in an ongoing relationship and declaring that incident to be a separate "transaction" for section 552 purposes. In the instant case, the insurance that Geosearch was considering buying would have covered the very well in which Howell and Geosearch both had a pecuniary interest. In holding that the relevant transaction is the well investment, we give the word "transaction," as it appears in subsections (1) and (2)(b) the same meaning—*i.e.*, the well investment. Geosearch and Howell both had a "pecuniary interest" in the well, and Howell knew that Geosearch's telephone call sought information concerning that well in order to influence a decision about the well.[5] Thus, we hold that the requirements of section 552 were satisfied by the uncontested facts, and the district court did not err in its submissions to the jury.

### B. *Justifiable Reliance*

A plaintiff may recover for negligent misrepresentation only if he proves "justifiable reliance" on that misrepresentation. Section 552(1); *Trenholm v. Ratcliff*, 646 S.W.2d 927, 931–32 (Tex.1983). This requirement, also called the "materiality" element, has two aspects: the plaintiff must in fact have relied; and this reliance must have been reasonable. *See generally*, W. Keeton, D. Dobbs, R. Keeton, D. Owen, *The Law of Torts*, § 108 (1984). Put another way, there must be a reasonable relation between the contents of the defendant's misrepresentation and the action the plaintiff took in reliance.

In Special Issue No. 1, the jury was asked whether Nagle of Howell Petroleum told Smith of Geosearch that Howell held "well control insurance" that covered Geosearch. Record Vol. 2 at 234. Before submission, Howell objected that the issue should be whether Nagle mentioned *underground blowout* insurance. Howell argues that the issue actually submitted to the jury is immaterial because Geosearch could not have reasonably relied on information about *well control insurance* in a decision about whether to buy *underground blowout* insurance.

At trial, an insurance expert testified that a basic well control insurance policy would not cover an underground blowout. Such coverage would have to come from a rider that would increase the premium by fifty percent. The expert also testified, however, that he had never written a well control policy *without* the underground blowout rider. Howell's policy for its own interest on the first well contained the rider, as did the policy taken out by both Howell and Geosearch on the second well. Smith's testimony about her telephone conversation with Nagle, as well as her notes on the conversation, show that the two discussed the absence of other riders, *i.e.*, "fishing," "stuck drill stem," and "sidetracking." Plaintiff's Exhibit No. 2. Because Nagle told her that certain riders were *not* included, Smith might have assumed that other riders, especially standard ones like underground blowout riders,

---

The dissent also correctly points out that other courts have followed narrower interpretations of § 552. As an example, the dissent cites *Devore v. Hobard Mfg. Co.*, a case in which the Louisiana Supreme Court affirmed dismissal of a school employee's suit against a school board. 367 So.2d 836 (La.1979). The plaintiff had been scalded by a double steamer in the school board kitchen; another school board employee gave the plaintiff's lawyer the wrong manufacturer's name, with the result that the plaintiff's suit against the manufacturer prescribed. The plaintiff sued the school board for negligent misrepresentation. The lower courts had held that the plaintiff failed to meet several of the requirements of § 552, including "pecuniary interest," but the Louisiana Supreme Court held

only that the plaintiff had failed to offer sufficient evidence that the school board knew she would *rely* on the information in litigation. *Id.* at 839. This requirement, embodied in § 552(2)(b), is distinct from the "pecuniary interest" requirement of § 552(1), at issue in the instant case.

5. The parties have not made arguments based on any unique features of the relationship between an operating and a nonoperating investor in an oil and gas drilling project. Because the parties have chosen not to address these questions, the Court disavows any intention to foreclose argument concerning the nature of duties in such a relationship, should future cases properly present the issue.

*were* included. Also, if Nagle had truthfully told Smith that Howell's well control insurance did not cover Geosearch at all, Geosearch might have inquired into getting its own well control policy which, in turn, might have included an underground blowout rider. Whether Geosearch in fact relied, and reasonably relied, was a question for the jury.

Special Issue No. 1 does not aim at the reliance element, but focuses instead on the contents of the representation. However, the "justifiable reliance" element is adequately addressed by Special Issues No. 6, in which the jury found that Geosearch relied on the misrepresentation; No. 8, in which the jury found that the reliance was justified; and No. 10, in which the jury found that the reliance was a proximate cause of Geosearch's damages. Special Issues Nos. 6, 8, and 10 make it clear to the jury that the "well control insurance" representation it found in Special Issue No. 1 must be subjected to a further materiality test. The jury found that Geosearch did establish this element of its case, and this finding is supported by substantial evidence. *Boeing Company v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc).

### C. *Damages*

The parties stipulated that Geosearch's share of the costs of controlling the first well and drilling the second was $454,-328.00. Geosearch presented several estimates of the cost of blowout insurance and the amount of a deductible for such insurance; the highest estimate was $56,633.00. Subtracting the second figure from the first yields an uncontested damage figure of $397,695.00. In response to Special Issue No. 13, the jury found Geosearch forty-five percent negligent. Special Issue No. 14 read: "What sum of money, if any, do you find, if paid now in cash, would fairly and reasonably compensate Geosearch for its Actual Damages?" Record Vol. 2 at 242. The jury answered, "$218,732," which happens to be fifty-five percent of $397,-695.00. After the jury returned its verdicts, Geosearch's attorney remarked on this coincidence, but the district court re-

plied, "I assume from the looks of it that you get forty-five percent of two hundred and eighteen thousand seven hundred and thirty-two dollars." Record Vol. 6 at 69. The court then dismissed the jury. By the time the district court entered judgment, however, it had interpreted the jury's verdict as having already made the deduction for Geosearch's comparative negligence, and the court declined to reduce the damages further. Howell timely moved for a judgment notwithstanding the verdict, which was denied.

Howell argues that the award should be reduced. Since Howell failed to object to any ambiguities that may be contained in Special Issue No. 14 before it was submitted to the jury, it cannot now attack the wording of the issue itself on appeal. Fed.R.Civ.P. 49(a); *Molex v. Nolan*, 759 F.2d 474, 478 (5th Cir.1985). However, Howell may contest the trial court's *interpretation* of the jury's verdict. By moving for a judgment n.o.v., Howell timely objected to this interpretation as soon as the district court announced it. Hence, Howell's objection has been preserved on appeal. First, Howell argues that reversal is required by Texas Rule of Civil Procedure 277, which requires the court to instruct the jury that it may not reduce damages for comparative negligence. However, special issues in federal court are governed by federal, not state, law. Fed.R.Civ.P. 49, Notes of Advisory Comm.; *Gonzales v. Missouri Pacific Railroad Co.*, 511 F.2d 629, 632 (5th Cir.1975); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2502 (1971 & 1986 Supp.).

A federal district court has latitude to handle special verdicts so as to give effect to the jury's intentions. For example, the court may correct clerical errors in a verdict and must harmonize apparently conflicting verdicts. Fed.R.Civ.P. 60(a); *Atlantic and Gulf Stevedores, Inc. v. Ellerman Lines Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962); *Mercer v. Long Mfg. N.C., Inc.*, 665 F.2d 61, 65 (5th Cir.1982). The court must interpret verdicts in the light of the instructions, evidence, and other surrounding circum-

stances. *McVey v. Phillips Petroleum Co.*, 288 F.2d 53, 59 (5th Cir.1961).

This Circuit has approved of similar efforts to interpret jury verdicts. For example, in one recent seaman's case, a jury found the plaintiff ninety percent negligent and proceeded to fix his damages at exactly ten percent of the stipulated amount. *Alvarez v. McDermott*, 674 F.2d 1037, 1046 (5th Cir.1982). The trial court refused to reduce the award further, and this Court affirmed, noting that the instructions were ambiguous. *Id.* In a securities case with four defendants, the jury found each defendant liable for exactly a quarter of the total damages. *G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 963–64 (5th Cir. 1981). The court inferred that the jury had misunderstood joint and several liability and the court entered judgment against each defendant for four times the jury's figure. *Id.* Other circuits have allowed similar adjustments. *See, e.g., Aquachem Co., Inc. v. Olin Corp.*, 699 F.2d 516, 520 (11th Cir.1983) (district court may amend special verdict to express jury's obvious intent in allocation of damages); *Bond-Johnson Exploration v. Schlumberger Technology*, 580 F.2d 391, 392–93 (10th Cir. 1978) (district court could infer that the jury had already reduced the award for the plaintiff's comparative negligence).

■ In the instant case, Special Issue No. 14, in asking the jury to "fairly and reasonably" set Geosearch's damages, may have led the jury to believe that it should deduct the amount attributable to Geosearch's own negligence. Record Vol. 2 at 242. There was no explicit instruction not to do so. The fact that the jury's award was exactly fifty-five percent of the uncontested damages also supports the trial court's conclusion. We do not find that the district court erred in refusing to reduce the award further.

### III. CONCLUSION

The district court did not err in denying Howell's request for instructions and a directed verdict on the "pecuniary interest"

element of negligent misrepresentation. There was no genuine issue as to whether Howell had a pecuniary interest in the well-drilling transaction. The court did present the issue of "justifiable reliance" to the jury, and the jury's finding against Howell on that issue is supported by substantial evidence. Finally, the trial court did not err in interpreting the jury's damages verdict as already accounting for Geosearch's negligence. Accordingly, the judgment of the district court is

AFFIRMED.

EDITH H. JONES, Circuit Judge, dissenting:

This case requires us to analyze, from the standpoint of a Texas court, the cause of action for negligent misrepresentation. The majority, in my view, have construed this tort far more broadly than either the Texas courts or Restatement § 552 appears to warrant. I therefore respectfully dissent.

Texas law does not take a broad view of the tort of negligent misrepresentation, and Texas courts have often given it a narrow and restricted scope. *See, e.g., Cook Consultants v. Larson*, 700 S.W.2d 231, 234 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.) (section 552 applies only to those persons "holding themselves out in the community as possessing unique skills," and cautions that "the expedition with which misinformation can be circulated and the potential magnitude of the loss *require a restricted rule* of liability for pecuniary loss caused by negligent misrepresentation" (emphasis added)); *Bernard Johnson, Inc. v. Continental Constructors*, 630 S.W.2d 365, 370 n. 4 (Tex.App.—Austin 1982, writ ref'd n.r.e.) (section 552 inapplicable to suits brought by a third party alleging negligent performance of a contract duty); *Bell v. Manning*, 613 S.W.2d 335, 338 (Tex.Civ.App.—Tyler 1981, writ ref'd n.r.e.) (refusing to impose § 552 liability on attorneys not in privity with plaintiffs).[1] Every Texas case holding a

---

1. It is interesting to note that the result in two of these cases would be out radically different

under the majority's construction of § 552. In *Bernard Johnson,* the majority would view the

defendant liable for negligent misrepresentation involves either a defendant who gave misinformation concerning the precise transaction in which he had a financial interest or a defendant whose profession was to give business advice or information. *See, e.g., Cook Consultants, supra* (surveyor liable for faulty surveying reports); *Great American Mortgage Investors v. Louisville Title*, 597 S.W.2d 425 (Tex.Civ. App.—Fort Worth 1980, writ ref'd n.r.e.) (title insurer held liable for erroneous representation in title policy binder); *Susser Petroleum Co. v. Latina Oil Corp.*, 574 S.W.2d 830 (Tex.Civ.App.—Texarkana 1978, no writ) (fuel supplier held liable for misrepresentation on availability of fuel to meet contract); *Rosenthal v. Blum*, 529 S.W.2d 102 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.) (physician liable for faulty diagnosis of patient); *Shatterproof Glass Corp. v. James*, 466 S.W.2d 873 (Tex.Civ. App.—Fort Worth 1971, writ ref'd n.r.e.) (accounting firm held liable for faulty audit reports).

The cases cited by the majority are readily distinguishable and do not support a broad interpretation of § 552 transactions. The *Heilner* case does not deal with or discuss negligent misrepresentation at all, but instead is plainly and explicitly bottomed on the concept of promissory estoppel. 670 S.W.2d at 656. *Aetna Life & Casualty* was a default judgment case whose holding is only that the tort of negligent misrepresentation is recognized in Texas, and that failure to answer or deny such allegations can be the basis of a valid default judgment. 576 S.W.2d at 117. It does not discuss the scope of § 552 transactions, and involved an insurer-defendant who would have been "in the business" of providing the information, which would have made irrelevant any question of whether there was a transaction in which the defendant had a pecuniary interest.

Similarly, *Berry*, the New Jersey Superior Court case cited, lends no support to the majority position. The case does not discuss the scope of any potential liability or even pass on whether a valid cause of action was present—it only holds that as the tort of negligent misrepresentation is recognized by New Jersey law, summary judgment against the plaintiff was inappropriate. As the court noted, however, "[t]he actual merit of the Berrys' claims is, of course, for the trier of fact after the development of a full record." 480 A.2d at 945. At most, the case might stand for the proposition that an employer can be "in the business" of providing information to an employee, but it nowhere discusses the scope or nature of a transaction in which the defendant has a pecuniary interest. Nor does the result in *Berry* suggest a compelling general direction for § 552; other courts have refused to impose liability in similar situations. *See Devore v. Hobard Manufacturing Co.*, 367 So.2d 836, 839 (La.1979).

It is axiomatic that on questions of state law, we should not extend or expand existing law absent clear indications to the contrary. *Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir.1986) (en banc); *see also Rhynes v. Branick Manufacturing Corp.*, 629 F.2d 409, 410 (5th Cir.1980) ("[e]ven in the rare case where a course of Texas decisions permits us to extrapolate or predict with assurance where that law would be had it been declared, we should perhaps ... be more chary of doing so than should an inferior state tribunal"). In the case before us, there are no clear signs that Texas courts would give Restatement § 552 the same broad reading as the majority; in fact, the caselaw suggests otherwise.

Not only Texas caselaw, but the Restatement of Torts itself does not readily accommodate liability on the basis found by the

transaction as the architect's contract to design the bulkhead, rather than the submission of the plans to the third-party contractor, and thus the defendant would have been liable. Similarly, the secretary's statement in *Bell* would be viewed as merely part of the overall transaction in which her employer had a pecuniary interest;

namely, his representation of his client. Under this interpretation, the misrepresentation to the non-client plaintiff would have been made "in the course of a transaction in which the defendant had a pecuniary interest," and thus liability would be imposed.

majority. Negligent misrepresentation, as defined in § 552, results in liability on a less stringent basis than that of fraud. The drafters of the Restatement recognized that in everyday conduct, people often misspeak, misconstrue and misstate information that is of importance to others. Woe betide us all were liability generally to span the entirety of such errors! The tort as described by the Restatement was thus carefully hedged about by, *inter alia*, rendering liable only those who are in the business, profession or employment of supplying information to others *or* who have a pecuniary interest in the transaction in which false information is supplied. § 552(1). This case does not, as the majority concede, involve Howell's business or profession, for Howell Petroleum is an oil company and the joint operator of the parties' mineral lease. The majority therefore properly focussed on the definition of "transaction," but their analysis, in my view, omits the "pecuniary interest" qualification of that requirement. The majority defined the issue as whether "this Court should define 'transaction' narrowly for § 552 purposes, to include only the insurance purchase that motivated Smith's phone call, or more broadly to cover the drilling venture that linked the two parties and made insurance necessary." Section 552(1) does not require such a dichotomy because it stipulates that liability can occur *only* where misinformation is supplied in the course of a "transaction in which the defendant has a pecuniary interest." However, Section 552(2)(b) goes on to refer to a "transaction that [the defendant] intends the information to influence." Therefore, because the transaction in which the defendant has a pecuniary interest must be the transaction that he intends the information to influence, the pecuniary interest must be directly related to the incorrect information. It is not reasonable to construe the word "transaction" differently in two subsections of § 552, as the majority in effect have done.

The majority's misplaced dichotomy may be demonstrated in another way. Howell had no pecuniary interest in Geosearch's insurance on the well. The only pecuniary interest identified by the majority is the joint investment of the parties in drilling the well. Yet this interest, to me, is a related interest rather than the direct pecuniary interest in the transaction on which I believe liability explicitly depends under § 552. Had the drafters of the Restatement sought to impose liability on a party who supplies misinformation in the course of a transaction *related to one in which* the defendant has a pecuniary interest, they could have done so with a simple but significant linguistic modification. The majority has, *sub silentio*, made this modification to § 552.

Finally, the logic behind the Restatement and Texas law do not lead to a conclusion that Howell should be held liable here. A 75–page, carefully bargained Operating Agreement between Howell and Geosearch specifically disclaims any duty on the part of Howell to carry physical damage insurance on jointly owned property. The Operating Agreement further provides that each party will be responsible for its own interest in the properties and will assume its portion of any loss that occurs. Geosearch should not be able to recover under the guise of a tort what it was unable to negotiate contractually with Howell. Put otherwise, because the Operating Agreement specifically took Howell out of the business of providing insurance for the joint owners, no social policy demands the imposition of a duty overriding that contractual limitation. The "pecuniary interest" test represents a rational constraint on liability for negligent misrepresentation: a party should not be exposed to potentially huge liability (here, over $250,000) where his own pocketbook did not provide the incentive to get the information right in the first place. Howell's pocketbook was not involved in Geosearch's quest for insurance coverage. Therefore, in my view, Howell had no legally enforceable duty to Geosearch pursuant to § 552, and the judgment should be reversed. I respectfully dissent.