**In re MELRIDGE, INC. SECURITIES LITIGATION.**

No. 87–1426–FR.

United States District Court, D. Oregon.

Nov. 17, 1993.

---

N. Robert Stoll, Gary M. Berne, Cecil B. Strange, Stoll, Stoll, Berne & Lokting, P.C., Portland, OR, Merrill G. Davidoff, John R. Taylor, Berger & Montague, P.C., Philadelphia, PA, for plaintiffs.

Barnes H. Ellis, Joel A. Mullin, Charles F. Adams, Stoel Rives Boley Jones & Grey, Portland, OR, for defendant Boettcher & Co., Inc.

**OPINION**

FRYE, Judge:

The matters before the court are 1) the motion of plaintiffs for entry of final judgment pursuant to Fed.R.Civ.P. 54(b) (# 2054); and 2) the motion of defendant Boettcher & Co., Inc. for judgment as a matter of law (# 2091-1), for new trial or remittitur (# 2091-2).

**BACKGROUND**

On February 2, 1993, this action came before the court for trial by jury. The plaintiffs, a defined class of purchasers of Melridge securities, alleged claims for relief under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k; Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2); Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5 of the Securities and Exchange Commission, and the securities laws of the States of Oregon and Washington.

Three defendants represented by counsel appeared for trial and participated in the jury selection process: Grant Thornton Nederland, Price Waterhouse, and Boettcher & Co., Inc. (Boettcher). After the jury was selected, but before opening statements were made, the plaintiffs and defendant Grant Thornton Nederland reached a settlement. On April 2, 1993, the settlement between the plaintiffs and Grant Thornton Nederland was reduced to writing and contained no requirement or condition for entry of an order of the court barring any future claims for contribution.

The trial then proceeded, with the plaintiffs presenting their evidence against defendants Price Waterhouse and Boettcher.

On April 9, 1993, the plaintiffs rested their cases-in-chief, and the court heard the motions of the defendants for directed verdicts.

On April 16, 1993, the plaintiffs and Price Waterhouse reached a settlement. The settlement between the plaintiffs and Price Waterhouse was expressly conditioned upon the entry by the court of an order barring all claims for contribution or indemnity against Price Waterhouse by the nonsettling defendants, which was subsequently entered by the court on November 1, 1993. Thereafter, the court granted the motion of Price Waterhouse to sever all claims against it.

On April 20, 1993, the court denied Boettcher's motion for judgment as a matter

of law. Boettcher then began the presentation of its evidence.

On May 13, 1993, Boettcher rested its case-in-chief, and the plaintiffs presented rebuttal evidence.

On May 14, 1993, the court denied Boettcher's renewed motion for judgment as a matter of law.

On May 19, 1993, closing arguments were made to the jury.

On May 27, 1993, the jury returned a special verdict in favor of the plaintiffs and against Boettcher. The jury found that Boettcher was liable to the plaintiffs under Section 10(b) of the Securities Exchange Act of 1934 for making untrue statements or omitting material facts with respect to 1) the value of the deferred crop cost asset; 2) the lack of internal accounting controls which resulted in false financial statements; and 3) the integrity of the management of Melridge.

The jury found that the damages caused to plaintiffs by Boettcher under Section 10(b) are $60,229,704.00 for the common stock sold in public offerings and traded on the stock market from November 16, 1983 to October 13, 1987, and $27,948,268.00 for the debentures sold in the 1986 offering and traded on the stock market.

The jury found that the Melridge stock and debentures would have had no value from November 16, 1983 until October 13, 1987 if the misrepresentations and the omissions of material fact for which the jury found Boettcher liable under Section 10(b) had not been made.

The jury found that the relative percentage of fault for the violations of Section 10(b) was 30% for Boettcher; 30% for Heublein, Flattum and Wood; 5% for Grant Thornton Nederland; and 35% for Eugene Stone, Jerald Hall, Mark Vander Ploeg, Louis Jaffe, Tom Thornton, Perkins Coie, and Price Waterhouse.

In the matters now pending before the court, plaintiffs move the court for the entry of judgment pursuant to Fed.R.Civ.P. 54(b), and Boettcher moves the court for judgment as a matter of law, for a new trial or remittitur.

## BOETTCHER'S MOTION FOR JUDGMENT AS A MATTER OF LAW, FOR NEW TRIAL OR REMITTITUR

Boettcher urges the court to enter judgment in its favor as a matter of law and notwithstanding the verdict of the jury on plaintiffs' claims under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 of the Securities and Exchange Commission.

Boettcher contends that the plaintiffs' claims under Section 10(b) were either insufficient as a matter of law or not supported by substantial evidence with respect to the alleged untrue statements or omissions of material fact relating to the lack of internal accounting controls resulting in false financial statements and the integrity of the management of Melridge. Boettcher contends that there was insufficient evidence for the jury to find it liable as to the alleged untrue statements or omissions of material fact relating to the value of the deferred crop cost asset.

Boettcher argues that the admission by the court, over objection, of testimony relating to George Heublein and the scandal involving the Job Corps tainted the trial and affected the jury's verdict, and therefore a new trial is required. Boettcher further argues that there was no jury finding that declines in price-value spreads were the result of market forces operating on a misrepresentation for which Boettcher was responsible; that the evidence presented by the plaintiffs as to damages was deficient as a matter of law; and that the jury was improperly permitted to find Boettcher liable under Section 10(b) on an implied theory of aiding and abetting. Boettcher also argues that the jury should have been instructed on a theory of issue preclusion based upon the grant of summary judgment to Furman Selz, and therefore the court should order a new trial.

The plaintiffs oppose Boettcher's motion for post-trial relief, including the motion for a new trial. The plaintiffs contend that Boettcher failed to preserve many of its objections to the manner in which the case was presented to the jury. The plaintiffs argue that the verdict of the jury on the Section

10(b) claim is supported by the evidence and the applicable law. Plaintiffs contend that there is no basis in law or fact for the reduction of damages urged by Boettcher, and that this court should deny the motion of Boettcher for judgment as a matter of law, for a new trial or remittitur.

### Applicable Law

In deciding whether to grant judgment as a matter of law under Fed.R.Civ.P. 50, the court must determine whether there is sufficient evidence to support the jury finding in favor of the nonmoving party. In deciding whether to grant a new trial, the court must decide whether the verdict is against the greater weight of the evidence or that it is quite clear that the jury has reached a seriously erroneous result. *Venegas v. Wagner,* 831 F.2d 1514, 1519 (9th Cir.1987).

### Analysis

Every argument made by Boettcher in support of its request for judgment as a matter of law or a new trial was made more than one time during the trial and extensively studied and considered by the court.

There are no grounds upon which this court will reverse its prior rulings and grant judgment as a matter of law or grant a new trial to Boettcher. There was ample evidence presented to the jury to support the findings as to the claims under Section 10(b). The jury found Boettcher liable on three separate claims of a misrepresentation of material fact or the omission of a material fact. The credibility of the witnesses presented by the plaintiffs and presented by Boettcher formed the basis for the verdict of the jury. The court accepts the verdict of the jury as to the credibility of the testimony of the witnesses and will not disturb the factual findings made by the jury.

The court finds that the facts presented and the law applicable to the claims of the plaintiffs are adequate to support the verdict of the jury. Further, the arguments made by Boettcher in support of an order of the court for remittance were fully considered during the trial. The court finds that no further action is required as to these issues.

### PLAINTIFFS' MOTION FOR THE ENTRY OF FINAL JUDGMENT

Both parties agree that it is in the interests of justice to have the court certify its judgment under Fed.R.Civ.P. 54(b) so that they may begin the appeals process.

The issues in dispute as to the entry of judgment are 1) whether a money judgment can properly be entered prior to the completion of the claims process; 2) whether plaintiffs must share with Boettcher any failure of defendants Wood, Flattum and Heublein to pay the judgments entered against them by an offset against the settlements; 3) whether the court must accept the jury's verdict under Section 11 of damages of either $0 or $192 per debenture; and 4) whether the court should assess prejudgment interest against Boettcher.

#### 1. *Final Money Judgment*

The plaintiffs propose that a final money judgment be entered by the court in the amount of $57,315,681.00 upon the jury's verdict for the plaintiffs under Section 10(b). These are the damages which flow from the misrepresentations and omissions for which Boettcher has been found liable, reduced by the proportion of fault (35%) which the jury attributed to the defendants who settled their cases with the plaintiffs and from which Boettcher is barred by an order of this court from asserting claims for contribution. Following the entry of final judgment, the plaintiffs propose that the amount of the final money judgment be paid into court or bonded for appeal, and that any appeals be taken and resolved.

Plaintiffs explain that a procedure for administering claims will be initiated. Each plaintiff will submit a claim form containing the data necessary to determine the damages sustained by that plaintiff. Any contested claims will be determined by the court or a special master. No plaintiff will receive more damages than the damages that he or she actually sustained, plus applicable interest. Any funds remaining after all of the

claims are paid will be returned to the defendants.

The plaintiffs contend that the entry of a lump sum judgment is proper in order to protect the plaintiffs from any attempt by Boettcher to hide or transfer asserts during the post-judgment proceedings, and in order to identify the size of the recoverable fund for the purposes of posting an adequate appeal bond.

Boettcher contends that it is not necessary for the court to enter a lump sum judgment in order to facilitate the appeal process. Boettcher contends that it would be improper for the court to enter a lump sum judgment because there is no way to know the amount of the plaintiffs' provable claims until the process for filing claims has been completed. Boettcher contends that the record, as it now stands, will support only the entry of judgment as it relates to liability and the process for filing claims.

Boettcher argues that the jury determined only the total number of dollars to be made available by Boettcher to pay the claims of the individual class members, and not a sum certain upon which a final judgment can be entered. Boettcher argues that the figure supplied by the plaintiffs is only an estimate based upon assumptions regarding the dates of purchase, periods of purchase, holding periods, and amounts received on sale, as well as the assumption that all of the class members will file claims and all of the claims filed will be paid.

The verdict of the jury is for $60,229,704.00 for the common stock sold in offerings and traded on the stock market from November 16, 1983 to October 13, 1987, and $27,948,-268.00 for the debentures sold in the 1986 offering and traded on the stock market. This evidence was provided by John Torkelson, the plaintiffs' expert witness on damages. Boettcher attempted to discredit Torkelson's figures through the impeachment of Torkelson, as well as the presentation of testimony of its own expert on the issue of damages. The jury found that the testimony of Torkelson was credible and adopted the calculations on damages that he presented. The court and the parties are bound by the verdict of the jury.

The plaintiffs and Boettcher agree that the actual damages suffered by each plaintiff will be established during the claims process. The entry of judgment for a sum certain is supported by the verdict of the jury and will allow the setting of an adequate bond on appeal.

2. *The Effect of Kaypro Factual Findings*

■ The plaintiffs agree that Boettcher cannot be held liable for the damages attributed to the fault of the defendants who entered into settlements which were explicitly conditioned upon the entry by the court of an order barring all future claims of contribution or indemnity by the nonsettling defendants (Eugene Stone, Jerald Hall, Mark Vander Ploeg, Louis Jaffe, Tom Thornton, Perkins Coie, and Price Waterhouse). As to the Section 10(b) claim for which the jury found Boettcher liable, the jury found that the relative percentage of fault of the defendants who settled their cases with the plaintiffs and received the benefit of a bar order was 35%. Plaintiffs propose that a judgment be entered under the Section 10(b) claim for the sum of $88,177,972.00, the total damages awarded for the common stock and the debentures, less the 35% attributed to the fault of the defendants who settled their cases against whom contribution claims are barred, for a total of $57,315,681.00.

Boettcher argues that the court should require that the damages attributable to nonsettling, insolvent, or absentee defendants (Heublein, Wood and Flattum) should be apportioned between Boettcher and the settlements with the prior settling parties. Boettcher explains that the *pro rata* share of the liability of absentee defendants was part of the price the plaintiffs paid to obtain settlements with those parties.

In *Franklin v. Kaypro Corp.,* 884 F.2d 1222 (9th Cir.1989), the court addressed the effect of a partial pretrial settlement in a securities case which is conditioned upon the entry by the court of a bar order extinguishing future claims for indemnity or contribution by nonsettling defendants. The court attempted to balance the rights of the nonsettling defendants to contribution among

joint tortfeasors with the general policy of the federal courts to promote settlement before trial.

The Court of Appeals focused on the alternative expounded by the Eastern District of Pennsylvania in *In re Sunrise Sec. Litig.*, 698 F.Supp. 1256 (E.D.Pa.1988), and explained:

> This scheme contemplates a partial settlement approved by the district court under Rule 23. Nonsettling defendants are then barred from further rights of contribution from the settling defendants. At trial, the jury is asked not only to determine the total dollar damage amount, but also the percentage of culpability of each of the nonsettling defendants as well as that of the settling defendants. Nonsettling defendants as a whole will then be required to pay the percentage of the total amount for which they are responsible. The nonsettling defendants will be jointly and severally liable for that percentage, and will continue to have rights of contribution against one another.
>
> This approach satisfies the statutory goal of punishing each wrongdoer....
>
> The goal of equity is also satisfied. Settling defendants pay an amount to which they voluntarily agree. The bar on further contribution extinguishes further risk on their part. Nonsettling defendants never pay more than they would if all parties had gone to trial. This comports with the equitable purpose of contribution.

*Franklin v. Kaypro Corp.*, 884 F.2d at 1231 (footnote omitted).

The *Kaypro* case does not address the issue of insolvent or absentee defendants; however, the court stated that after the jury determines the percentage of culpability of each of the nonsettling, as well as the settling defendants, the "[n]onsettling defendants as a whole will then be required to pay the percentage of the total amount for which they are responsible." *Id.* There is nothing in the *Kaypro* case to support the position of Boettcher that a *pro rata* share of the fault assessed to the absentee, nonsettling defendants should be shifted to the plaintiffs, and that the risk that this would happen was part of the price the plaintiffs paid to obtain settlements. The risk of insolvent defendants has fallen upon those who are jointly and severally liable for the injury. Nor did *Kaypro* prohibit contribution claims against the settling defendants where no bar order was bargained for in the settlement or imposed by the court. Since no contribution claims have been asserted against Grant Thornton Nederland, the court will not address this issue further.

The court will reduce the damages award against Boettcher by the percentage of relative fault that the jury attributed to the settling defendants who are protected from contribution or indemnity claims by order of the court.

### 3. Damages under Section 12, Section 11 and State Law

The court will enter judgment establishing liability and the measure of damages on the claims under Section 12(2) and the state law claims.

■ The only remaining issue is the measure of damages under the Section 11 claim. The jury found Boettcher liable for misleading disclosures in the registration statement for the 1987 debenture offering. The measure of damages under Section 11 is the difference between the purchase price of the debenture and the value of the debenture at the time the suit was brought, reduced by the portion of the decline in the value of the debentures that the defendants have shown was attributable to causes other than the violations of Section 11.

It is undisputed that the purchase price of a Melridge debenture at the time of the public offering on October 13, 1987 was $640. The jury found that the value of the debenture on December 22, 1987 was $0.

The jury was asked to state the dollar amount of difference between the purchase price of $640 on October 13, 1987 and zero, which was the value found by the jury at the time the suit was brought, which was "caused by factors other than the Section 11 violation(s) which you have found against Boettcher." Verdict Form, Question I.C., p. 2. The jury's answer was "$640.00." The jury then determined that the relative percentage of

fault for the violations of Section 11 for which it found Boettcher liable were 30% for Boettcher; 30% for Heublein and Wood; and 40% for the settling defendants. *Id.,* Question I.D., p. 3.

In a Supplemental Verdict Form, the jury was asked to state the dollar amount of difference between the purchase price of $640 and the value of $0 "which was not the result of the Section 11 violations which you found that Boettcher committed." The jury's answer was "$640.00."

In a Second Supplemental Verdict Form, the jury was asked to "[s]tate the amount of damages per debenture that the plaintiffs are entitled to recover against Boettcher under Section 11." The jury's answer was "$192.00."

The plaintiffs contend that the jury intended that 100% of the diminution in the value of the debentures was caused by the Section 11 violations. The plaintiffs argue that the jury's intent is consistent with the verdict under Section 10(b) and indicated by the fact that the finding of $192 per debenture by the jury is exactly 30% of the $640 decline.

The plaintiffs argue that the court should enter judgment for them and against Boettcher for 60% of the $640 decline per debenture, which includes the 30% of the fault which the jury attributed to Boettcher and the 30% of the fault which the jury attributed to Heublein and Wood.

Boettcher contends that the court must decide whether to accept the jury's first two verdicts and award no damages at all, or to accept the jury's third verdict and award $57.60 per debenture, which is 30% of the $192.

■ A district court may, in its sound discretion, amend a jury's verdict after it is rendered to make it conform to the jury's clear intention. *Geosearch, Inc. v. Howell Petroleum Corp.,* 819 F.2d 521, 527–28 (5th Cir.1987); *Aquachem Co. v. Olin Corp.,* 699 F.2d 516, 520 (11th Cir.1983); *Bond–Johnson Exploration, Inc. v. Schlumberger Technology Corp.,* 580 F.2d 391, 392–93 (10th Cir. 1978).

The jury found in the Second Supplemental Verdict that plaintiffs were entitled to recover $192 per debenture under Section 11. This sum of $192 per debenture is 30% of $640, the percentage of relative fault that the jury attributed to Boettcher. The jury consistently found that Boettcher was responsible for 30% of the decline after allocating relative fault. The jury, unaware of the *Kaypro* issues, stated a number which reflected its determination of the relative fault of Boettcher.

The issue of the measure of damages under Section 11 becomes relevant only in the event that the verdict on the Section 10(b) claims fail. The court will not set the measure of damages under Section 11 in the judgment, but will enter a judgment establishing liability and reserving ruling as to all damages issues under Section 11, if appropriate, upon remand.

### 4. *Prejudgment Interest*

■ In *Osterneck v. Ernst & Whinney,* 489 U.S. 169, 176, 109 S.Ct. 987, 991, 103 L.Ed.2d 146 (1989), the Court stated:

> In deciding if and how much prejudgment interest should be granted, a district court must examine ... matters encompassed within the merits of the underlying action. For example, in a federal securities action such as this case, a district court will consider a number of factors, including whether prejudgment interest is necessary to compensate the plaintiff fully for his injuries, the degree of personal wrongdoing on the part of the defendant, the availability of alternative investment opportunities to the plaintiff, whether the plaintiff delayed in bringing or prosecuting the action, and other fundamental considerations of fairness.

Boettcher recognizes that whether and in what amount prejudgment interest should be awarded is a discretionary matter to be decided by the court. Boettcher urges the court to exercise its discretion and to deny any prejudgment interest on the grounds that 1) Boettcher did not cause any delay; 2) Boettcher was not unjustly enriched by these transactions; 3) the plaintiffs recognized that Melridge was a speculative, non-dividend

stock; 4) and the plaintiffs' case against Boettcher was legitimately disputed.

The plaintiffs contend that the court should award prejudgment interest in order to adequately compensate the defrauded investors for not having funds that they would have had but for the fraud. Plaintiffs explain that 1) they did not create any inequitable delay; 2) Boettcher was unjustly enriched because it had the use of monies throughout this litigation that the jury has found was required to compensate the plaintiffs; 3) the plaintiffs did not assume the risk of the fraud of Boettcher; and 4) the assertion of a legitimate dispute does not erase the effects of fraud.

Whether to award interest on the federal claims is discretionary with the court. Using the factors set out by the Supreme Court in *Osterneck*, the court will exercise its discretion to deny prejudgment interest. Boettcher did not cause delay in resolving the matter through the courts and did not have the use of the proceeds of the sales of securities to members of the plaintiff class so as to be unjustly enriched by these transactions.

Since the court has declined to award prejudgment interest on the federal claims, it also declines to award interest on the state law claims.

## CONCLUSION

The motion of the plaintiffs for entry of final judgment (# 2054) is granted. The motion of Boettcher for judgment as a matter of law (# 2091–1), for new trial or remittitur (# 2091–2) is denied. The plaintiffs shall prepare a judgment in accordance with this opinion and order and submit it to the court. A copy of the proposed judgment shall be sent to Boettcher. Boettcher shall file any objections not heretofore presented with the court within five days of the receipt of the proposed judgment from the plaintiffs.