**CONNECTICUT GENERAL LIFE INSURANCE COMPANY**

v.

**Mary Ella THOMAS and Lydia Jean Green, Individually and as Next Friend for James Clifton Green III and Bianca Tramaine Green.**

**Civ. A. No. G–95–080.**

United States District Court,
S.D. Texas,
Galveston Division.

Dec. 18, 1995.

---

Candice E. Sayre, Shannon Martin Finkel-
stein & Sayre, Houston, TX, Janis L. Cravey
Johnson, Offices of J.L. Johnson, Dallas, TX,

for Connecticut General Life Insurance Company.

Angela Zbranek, Liberty, TX, Bernadette Johnlewis, Houston, TX, for Mary Ella Thomas, Lydia Green, Individually and as next friend for James Clifton Green III and Bianca Tramaine Green, James Clifton Green, III, Bianca Tramaine Green.

Zeb Davidson Zbranek, Baker & Zbranek, Liberty, TX, for Mary Ella Thomas.

### ORDER

KENT, District Judge.

Presently before the Court are the following Motions: Connecticut General's Motion to Dismiss, with request for attorneys' fees; Defendant Mary Ella Thomas's Motion for Summary Judgment; Defendant Lydia Jean Green's variously Amended and Supplemented Motion for Judgment on the Pleadings; Green's Motions for Sanctions pursuant to Rules 11, 26(g)(3), and 56(g) of the Federal Rules of Civil Procedure; Green's Motion for Additional Time For Discovery; and Green's Motion for the Court to Accept Stipulations of Fact. For the reasons set forth below, Connecticut General's Motion to Dismiss and its request for attorneys' fees are hereby **GRANTED,** and Defendant Thomas's Motion for Summary Judgement is likewise **GRANTED.** Defendant Green's Motion for Judgment on the Pleadings and her Motions for Sanctions are hereby **DENIED.**[1]

### I. BACKGROUND

On September 6, 1994, James C. Green (the Decedent) died in an automobile accident. Mary Ella Thomas is the mother of the Decedent. Lydia Jean Green is the widow of the Decedent, and James Clifton Green III and Bianca Tramaine Green are the children of the Decedent. The Decedent was an employee of MidCon, a subsidiary of Occidental Petroleum. The Decedent participated in various types of insurance plans offered to its employees by MidCon, including Basic Life Insurance (BLI), Group Universal Life Insurance (GUL), Occupational Accidental Death and Dismemberment (OAD & D), and Voluntary Accidental Death and Dismemberment (VAD & D). The BLI and OAD & D plans were noncontributory plans for which MidCon paid the entire premium. Employees wishing to participate in the GUL and VAD & D plans were required to pay premiums. The GUL plan was paid for by the Decedent through a separately itemized payroll deduction described as "GUL INS" on the Decedent's pay stub. Prior to his marriage, the Decedent designated Thomas as the beneficiary of all of his insurance policies obtained through MidCon.

In 1988, when Green and the Decedent were married, the GUL insurance plan was one of nine benefit plans offered by MidCon and Occidental to its employees, which plans were each treated individually and summarized in separate sections of the employee benefit handbook. The portion of the 1988 handbook devoted to the GUL plan stated "[y]ou may name anyone who has an insurable interest as your beneficiary, and you may change your beneficiary designation at any time by completing the proper form. The Equitable Certificateholder Service [2] has the necessary form." After the employee handbook was revised in 1990, the GUL portion of the handbook provided that "you may change your beneficiary designation at any time by completing the proper form. Contact The Equitable Certificateholder Service for the necessary form." The handbook also included a toll-free number through which employees could reach the Certificateholder Service.

---

1. The Court grants Thomas's Motion for Summary Judgment without considering certain affidavits and proposed stipulations of fact relevant to Green's Motion for Additional Time For Discovery and her Motion for the Court to Accept Stipulations of Fact. Thus, the Court's disposition of Thomas's Motion for Summary Judgment renders these motions moot, and Green's Motion for Additional Time and Motion to Accept Stipulation are therefore **DENIED.**

2. The GUL plan was originally issued and administered by the Equitable Life Assurance Society of the United States. In 1990, CIGNA, a holding company for Connecticut General, acquired a portion of Equitable's assets, including the GUL policy at issue here.

In 1993, after Connecticut General took over the administration of the GUL plan, the GUL portion of the MidCon handbook provided that "you may change your beneficiary designation at any time by submitting the proper form directly to CIGNA. Contact the CIGNA Customer Service Center for the necessary form." The handbook included CIGNA's toll-free number.

The Certificate of Insurance issued by Equitable provided that the beneficiary could be changed "by written notice to us [Equitable]. Such notice must be on a form acceptable to us." The Certificate of Insurance issued by Connecticut General contains an identical requirement for changing the beneficiary.

On or about June 13, 1988, the Decedent executed a change of beneficiary form for his VAD & D insurance, designating Green as the new beneficiary. The form was a somewhat generic form with "VAD & D" handwritten across the top. On or about June 17, 1988, the Decedent executed a change of beneficiary form for his noncontributory plans, the BLI and OAD & D plans, again designating Green as the new beneficiary. This form stated it was for the Decedent's "Noncontributory Life Insurance and my Noncontributory Accidental Death and Dismemberment Insurance." The beneficiary changes for the Decedent's VAD & D, BLI, and OAD & D policies were submitted by the Decedent to MidCon. The parties agree that the Decedent never executed a change of beneficiary form for his GUL benefits.

Although Thomas is the only designated beneficiary of the GUL policy, Green contends she is entitled to the proceeds. Faced with the competing claims asserted by Thomas and Green, Connecticut General filed this interpleader action. On June 27, 1995, Connecticut General deposited into the Court $145,000, plus interest, the amount of the benefits payable under the GUL policy.

## II. CONNECTICUT GENERAL'S MOTION TO DISMISS

■ Because it has deposited into the Court the full amount of the benefits payable

under the disputed policy, Connecticut General now seeks to be released from all liability as to the proceeds of the GUL policy and to be dismissed as a party to this action. Connecticut General asserts no claim to the GUL proceeds and it has paid the full amount of benefits due under the GUL policy into the Court; Connecticut General, therefore, is entitled to be discharged from the action. *See, e.g., Sun Life Assurance Co. of Canada v. Thomas,* 735 F.Supp. 730 (W.D.Mich.1990). Accordingly, Connecticut General's Motion to Dismiss is hereby **GRANTED,** and Connecticut General is dismissed as a party to this action and released from further liability as to the proceeds of the GUL policy.

## III. DISPOSITIVE MOTIONS OF DEFENDANTS THOMAS AND GREEN

Defendant Thomas has moved for summary judgment on her claim of entitlement to the GUL proceeds. Similarly, Defendant Green has moved for judgment on the pleadings [3] in favor of her claim to the proceeds. Because a favorable decision on one Motion necessarily amounts to an unfavorable ruling on the other Motion, the Court will consider these Motions together.

■ Green has devoted considerable portions of her many motions attempting to convince the Court that this dispute is governed by the Employee Retirement Security Act, 29 U.S.C. § 1001 *et. seq.* (ERISA). Green's efforts, however, were largely unnecessary, because no party now challenges the application of ERISA, and there is no doubt this dispute in fact is governed by ERISA. ERISA regulates employee welfare benefit plans established or maintained by an employer for the "purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability [or] death." 29 U.S.C. § 1002(1); *see also* 29 U.S.C. § 1003. The GUL policy provides for the payment of benefits in the event of death, and was offered by MidCon

---

**3.** However, because Green has submitted numerous materials outside pleadings, the Court treats

Green's motion as a summary judgment motion. *See* Fed.R.Civ.P. 12(c).

as a part of its employee benefits package. Thus, the GUL insurance plan at issue here clearly is a welfare benefit plan governed by ERISA.

■ ERISA preempts all state laws relating to an ERISA-governed employee benefit plan. 29 U.S.C. § 1144(a). The designation of a beneficiary is sufficiently related to an employee benefit plan that any state law governing the designation of beneficiary is preempted by ERISA. *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1325 (5th Cir. 1994). However, because ERISA itself does not set forth a specific procedure that must be followed to effect a change of beneficiary of an ERISA plan and is silent on the question of which party shall be deemed beneficiary among disputing claimants, this Court must look to principals of federal common law to resolve the dispute between Green and Thomas. *Id.* at 1326; *Phoenix Mutual Life Ins. Co. v. Adams*, 30 F.3d 554, 562 (4th Cir.1994).

■ Green concedes the Decedent never changed his GUL beneficiary designation; however, she nonetheless contends she is entitled to the GUL proceeds. While Green's theory supporting her position has evolved and changed form during the pendency of this action, she now bases her claim on the doctrine of substantial compliance. In essence, Green contends that by changing the beneficiary on three separate insurance plans, the Decedent substantially complied with the GUL change of beneficiary requirements. This argument is without merit.

■ As it relates to an ERISA benefit plan, the federal doctrine of substantial compliance is aimed at giving effect to the insured's intent to comply with policy provisions regarding change of beneficiaries when that intent is evident. Therefore, under the federal common law doctrine of substantial compliance,

> an insured substantially complies with the change of beneficiary provisions of an ERISA life insurance policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy.

*Phoenix*, 30 F.3d at 564. Under this standard, it is clear the actions of the Decedent do not amount to substantial compliance with the GUL change of beneficiary provisions.

First, there is simply no evidence before this Court that the Decedent intended to make Green the beneficiary of his GUL policy. Contrary to Green's assertion, the fact that the Decedent made Green the beneficiary of his other insurance plans does not amount to evidence that he intended to make her the beneficiary of the GUL plan. If, for example, the Decedent had submitted to Equitable or Connecticut General an incomplete change of beneficiary form or orally informed the insurer that he wanted to make Green his new GUL beneficiary, the Court would consider this to be evidence of his intent to change his beneficiary. However, the execution of other change of beneficiary forms, each clearly identified as being applicable to one of the other insurance plans in which the Decedent participated, cannot be considered evidence of the Decedent's intent to change the beneficiary of another completely separate insurance plan. Moreover, even if the Decedent did intend to make Green the beneficiary of the GUL policy, this subjective intent is not enough to support Green's claim to the GUL proceeds.

As noted above, in addition to evidence of the intent to change the beneficiary of a policy, the doctrine of substantial compliance also requires that the insured undertake some positive action that is effectively the same as that required by the policy. From the time of the Decedent's marriage to Green until the time of his death, the MidCon employee handbooks made clear that the GUL beneficiary could be changed by submitting the change to the insurer.[4] In the six years

---

4. Green's argument that the summary plan change of beneficiary provisions contained the MidCon handbook are vague and ambiguous is ludicrous. In 1988, the year the Decedent married Green, the handbook provided that the beneficiary of the GUL policy could be changed by completing a form held by Equitable, the GUL administrator. In 1993, the year before his

between his marriage and death, the Decedent did not submit to Equitable or Connecticut General a change of beneficiary form for his GUL policy. Submitting to MidCon beneficiary changes for separate, unrelated policies cannot be considered the practical equivalent of giving Connecticut General written notice of a beneficiary change. While the doctrine of substantial compliance may be useful in cases where there has been less than strict and complete compliance with the change of beneficiary provisions of an ERISA life insurance plan, the doctrine is simply inapplicable in cases such as the one at bar, where there has been *no* compliance with policy requirements.[5]

Because Green cannot rely on the doctrine of substantial compliance to save the Decedent's failure to make her the beneficiary of his GUL policy, the proper resolution of this case is readily apparent. The Decedent properly designated Thomas as the beneficiary of his GUL policy, and that designation was never changed. The GUL plan requires payment of the GUL proceeds to the designated beneficiary; Thomas, therefore, is entitled to receive the GUL benefits deposited into the Court by Connecticut General, and Green has no right to receive any portion of the GUL benefits. *See* 29 U.S.C. § 1104 ("a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... in accordance with the documents and instruments governing the plan insofar as such documents are consistent with the provisions of [ERISA]."); *Wright v. Nimmons*, 641 F.Supp. 1391 (S.D.Tex.1986) (fiduciary is obligated to administer ERISA plan in accordance with instruments and documents governing the plan). Accordingly, Green's much amended and supplemented Motion for Judgment on the Pleadings is hereby **DENIED**, and Thomas's Motion for Summary Judgment is hereby **GRANTED**.[6]

## IV. GREEN'S MOTIONS FOR SANCTIONS

Green has filed three motions seeking sanctions against Thomas pursuant to Rules 11, 26 and 56 of the Federal Rules of Civil Procedure. According to Green, sanctions are warranted because (1) Thomas untimely designated certain potential witnesses who should have been known to Thomas long before they were disclosed and used affidavits from these witnesses in support of her Motion for Summary Judgment;[7] (2) Thom-

death, the handbook provided that the beneficiary could be changed by submitting the proper form directly to CIGNA, and directed the insured to contact CIGNA for the necessary form. These provisions are straightforward, and make completely clear the steps required to change the designated beneficiary. *See Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1452 (5th Cir.1995) (language of an ERISA insurance contract should be given its ordinary and popular meaning). Moreover, even if the requirements were ambiguous, any such ambiguity would not entitle Green to the GUL proceeds. While ambiguities in an ERISA policy must generally be construed in favor of the insured, *e.g., Todd,* 47 F.3d at 1451–52, Green cannot use a purported ambiguity as a substitute for evidence of the Decedent's intent to make her the beneficiary of the GUL policy or evidence of positive action by the Decedent to effectuate the change.

5. Generally, whether an insured has substantially complied with an ERISA policy's change of beneficiary requirements is a question of fact, *Phoenix*, 30 F.3d at 565, making resolution of the issue at the summary judgment stage inappropriate. In the case at bar, however, there is no evidence of any compliance with the change of beneficiary requirements. The case, therefore, simply involves the straightforward enforcement of an unambiguous ERISA life insurance plan, and thus may properly be decided at this stage of the litigation.

6. Thomas initially asserted state law claims against Connecticut General for failure to pay the proceeds of the GUL policy; however, recognizing ERISA's preemptive effect, Thomas has now abandoned her state law claims against Connecticut General. *See* Thomas's Response to Green's Motion for Sanctions Pursuant to Rule 11 at p. 2. The only relief now sought by Thomas is the recovery of the interpled funds deposited into the registry of the Court by Connecticut General.

7. In these affidavits, three witnesses who are related to Thomas and the Decedent stated the Decedent told them he intended to take care of his mother by naming her the beneficiary of one of his insurance policies. The fourth witness, an employee of a subsidiary of MidCon, stated that he helped the Decedent fill out forms related to the VAD & D plan, and that the Decedent understood that the VAD & D plan was not the same as the GUL plan and that the form used to change the VAD & D beneficiary could not be used to change the GUL beneficiary. It appears from

as's attorney failed to make a reasonable inquiry into the law and the facts of the case before filing her Answer and Counterclaims; and (3) Thomas's filing of her Motion for Summary Judgment was improper, because the issue of substantial compliance is a question of fact.

Rule 26(a)(1) of the Federal Rules of Civil Procedure requires the parties to make an initial disclosure of witnesses and documents. Rule 26(g)(1) requires that every disclosure be signed by an attorney, and provides that the attorney's signature amounts to a certification that, "to the best of the signer's knowledge, information, and belief, formed after reasonable inquiry, the disclosure is complete and correct as of the time it was made." Pursuant to Rule 26(g)(3), the Court may assess sanctions if the certification is false.

▪ As conceded by Green, Thomas initially disclosed certain documents. *See* Green's Motion for Sanctions Pursuant to Rule 26(g)(3) at p. 2. On September 28, 1995, Thomas supplemented her initial disclosure by informing Green of the potential witnesses. However, Green's bare allegations that Thomas must have known about these witnesses at the time of her initial disclosure are insufficient to establish that Thomas's initial certification was false and that sanctions are warranted. Moreover, even if Thomas was aware of the information held by these witnesses at the time of her initial disclosure, their knowledge did not become relevant until July 7, 1995, when Green filed her Supplement to Amended Motion for Judgment on the Pleadings, which first raised the issue of the Decedent's intent to make Green his beneficiary. As required by Rule 26(e), Thomas supplemented her disclosure when it became apparent that the witnesses' knowledge may be relevant. While Green contends the deadline for pretrial had passed long before Thomas made

her supplemental disclosures, Rule 26(a)(3) requires pretrial disclosures to be made at least thirty days before trial. Given that no trial date had been set in this case, the Court concludes that Thomas's supplemental disclosure was in no way untimely. Accordingly, Green's Motion for Sanctions pursuant to Rule 26(g)(3) is hereby **DENIED.**

▪ Rule 56(g) provides that "[s]hould it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees." Fed.R.Civ.P. 56(g). Green contends Thomas acted in bad faith by using in support of her Motion for Summary Judgment affidavits from the witnesses disclosed on September 28, 1995, because the witnesses were never revealed in any prior pleadings and the untimely disclosure of the witnesses was designed to "surprise the opposition" and delay the resolution of the case. Preliminarily, the Court notes that, as a general rule, witnesses are not revealed in pleadings. Moreover, while Rule 56 contains no requirement that affiants be disclosed prior to filing a summary judgment motion, Thomas nonetheless provided Green with the names of the witnesses more than a week before Thomas filed her Motion for Summary Judgment. Because the Court has already concluded that Thomas's supplemental disclosure was timely and proper, the timing of the disclosure does not justify an assessment of sanctions under Rule 56(g) any more than it does under Rule 26(g)(3).

Other than more bare allegations, Green has presented no evidence that the affidavits were otherwise filed in bad faith or solely for the purpose of delay,[8] and the Court's own

her Motions that Green objects only to the untimely disclosure of and use of affidavits from the three witnesses related to Thomas.

8. In fact, it is difficult for the Court to envision a situation where affidavits filed by a party in support of that party's motion for summary judgment could somehow delay the resolution of a

case. It seems to the Court that only affidavits submitted in opposition to a summary judgment motion could delay the resolution of a case, by falsely creating an issue of fact and thus precluding the granting of summary judgment.

review of the record in this case satisfies the Court that the affidavits were filed in good faith and without intent to delay resolution of the case. Moreover, because the Court granted Thomas's Motion for Summary Judgment without considering the challenged affidavits, Green suffered no prejudice from Thomas's belated disclosure of the witnesses and the filing of their affidavits. Accordingly, Green's Motion for Sanctions pursuant to Rule 56(g) is hereby **DENIED.**

While Green's Motions for Sanctions pursuant to Rule 26 and 56 are completely without merit, the Court is particularly disturbed by Green's Rule 11 Motion for Sanctions. Based upon the Court's review of the record in this case, the accusations hurled by Bernadette Johnlewis, Green's attorney, are more descriptive of her own improper conduct than that of Thomas's attorney, and the Court is frankly dumbfounded that Johnlewis has the audacity to suggest that sanctions may be warranted against Thomas or her attorney.

It is apparent to the Court that Johnlewis is the one who failed to make reasonable inquiry into the law and facts of this case. In her original Motion for Judgment on the Pleadings, Ms. Johnlewis contended Green was entitled to the GUL proceeds because spousal consent was required if any other party was named as beneficiary. However, Johnlewis was forced to amend her Motion, because ERISA's spousal consent provisions apply only to pension plans, not welfare benefit plans. *See* 29 U.S.C. § 1055. In addition, Johnlewis at one point contended the Decedent had changed the beneficiaries of all his insurance policies (*see* Amended Motion for Judgment on the Pleadings at p. 4–5), an assertion she ultimately acknowledged to be untrue. In addition, Johnlewis stated the summary description of the GUL plan required that a change of beneficiary be in writing and delivered to MidCon (*see* Amended Motion for Judgment on the Pleadings at p. 7), which again proved to be completely inaccurate. Compared to the apparent absence of any factual or legal investigation by Johnlewis, the fact that Thomas's attorney did not initially recognize that ERISA governed this dispute and preempted all state law claims is, at most, a minor transgression.

The Court finds absurd the argument that sanctions are appropriate because Thomas filed a motion for summary judgment when substantial compliance is a question of fact precluding the granting of summary judgment.[9] First, as previously noted, Green's Motion, while denominated as a Motion for Judgment on the Pleadings, is in fact a Motion for Summary Judgment, because Green has submitted numerous materials outside the pleadings. The sole basis for Green's claim of entitlement to the GUL proceeds is the doctrine of substantial compliance. Thus, Johnlewis contends it is improper and a sanctionable offense for *Thomas* to file a motion for summary judgment, but that it is entirely proper for *Green* to file a motion seeking relief on the very grounds Johnlewis contends renders Thomas's motion improper. This was a proper case for resolution by motion for summary judgment, and Thomas's attorney quite correctly sought the relief to which his client was entitled as a matter of law.

■ The Court finds even more astonishing the fact that Johnlewis quite obviously failed to make a reasonable inquiry into the law governing motions for sanctions before she filed a motion accusing another attorney of failing to make a reasonable inquiry into the law. Rule 11 specifically provides that a motion for sanctions "shall not be filed or presented to the court unless, within twenty-one days after service of the motion . . . , the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Fed.R.Civ.P. 11(c)(1). Thus, a party seeking Rule 11 sanctions must first serve the motion upon the opposing party. If the alleged violation is not corrected within twenty-one days after service, the motion seeking sanctions may then be filed with the Court. *Elliott v. Tilton,* 64 F.3d 213, 216 (5th Cir.1995) (assessment of Rule 11 sanctions improper where motion seeking sanctions was not served upon opposing party twenty-one days before the motion was filed). Here, Johnlewis served her Rule 11 Motion on Thomas on

---

**9.** Green raised this argument in each of her    Motions for Sanctions.

October 13, 1995, but filed the Motion with this Court on October 16, 1995. Because Johnlewis did not comply with Rule 11's twenty-one day notice period, her Rule 11 Motion is improper and cannot support the assessment of sanctions. Moreover, to the extent Johnlewis seeks Rule 11 sanctions for Thomas's allegedly untimely disclosure of witnesses, disclosure and discovery disputes are specifically exempted from the scope of Rule 11 sanctions. *See* Fed.R.Civ.P. 11(d). Accordingly, there is absolutely no factual or legal basis for the assessment of sanctions against Thomas's attorney under Rule 11, and Green's Motion is hereby **DENIED.**

■ Moreover, given that the Rule 11 Motion is completely baseless and unjustified, the Court, pursuant to Rule 11(c)(1), hereby ORDERS counsel for Green to pay Seven Hundred and Fifty Dollars ($750.00) directly to Thomas. This amount represents the reasonable amount of attorneys' fees incurred by counsel for Thomas in opposing this frivolous Rule 11 Motion for Sanctions, as evidenced by the affidavit attached to Thomas's Response to Green's Rule 11 Motion. This sanction is assessed against Ms. Johnlewis, and shall be paid by Johnlewis. Defendant Green is in no way responsible for the assessment of this sanction, and shall in no way be liable for the payment of the sanction. SAID $750.00 SANCTION SHALL BE PAID BY MS. JOHNLEWIS DIRECTLY TO THOMAS WITHIN FIFTEEN (15) DAYS OF THE DATE OF THIS ORDER. FAILURE OF MS. JOHNLEWIS TO COMPLY WITH THIS ORDER SHALL SUBJECT HER TO SUCH FURTHER SANCTIONS AS THIS COURT MAY DEEM APPROPRIATE.[10]

## V. ATTORNEYS' FEES AND COSTS

■ Finally, Connecticut General seeks an award of approximately $10,500 in attorney's fees and costs. While the award of attorneys' fees and costs in an interpleader action is a matter left to the discretion of the

trial court, fees and costs generally will be awarded to a disinterested stakeholder required to participate in a dispute not of his own making. *Murphy v. Travelers Ins. Co.,* 534 F.2d 1155, 1164 (5th Cir.1976).

■ Connecticut General contends it is entitled to an award of attorneys' fees because it "has had to referee and participate at a level quite unusual in an interpleader action, and as a result incurred unnecessary attorneys' fees and costs." The file in this matter completely supports this description of Connecticut General's involvement in the case. The tone of the filings in this case make clear that the relationship between the parties has been extremely contentious. Despite the Court's strong recommendation that the parties work to settle the dispute outside the judicial arena, no settlement was reached, and the parties began filing warring motions accusing the other of improper behavior. The Court agrees with Connecticut General that the hostility between Green and Thomas and their litigation strategies has needlessly complicated this action and caused Connecticut General to incur unnecessary attorneys' fees and costs. At a status conference held in July, 1995, the Court informed the parties it was not inclined to grant attorneys' fees to any party. That statement, of course, was not a final ruling on the issue of attorneys' fees. Given the course this litigation has taken since that status conference, the Court is convinced that Connecticut is entitled to an award of attorneys' fees. After considering the nature of this case and the level of Connecticut General's involvement in the case, the Court concludes that the $10,013 in attorneys' fees sought by Connecticut General is reasonable. Accordingly, Connecticut General's Motion for Attorneys' Fees is hereby GRANTED. Attorneys' fees in the amount of $10,013.00 and costs in the amount of $493.43 shall be paid to Connecticut General from the funds held by the Court in this action, and the balance of the funds,

---

10. Should Ms. Johnlewis have occasion to appear before this Court on other matters, the Court strongly recommends she thoroughly investigate the facts of that case and the applicable law before filing any pleading or motion. The Court will be most displeased if it is again forced to suffer through the myriad of poorly drafted and inappropriate motions as were filed by Ms. Johnlewis in this case, and the Court will not hesitate to assess further sanctions if appropriate.

**306**

including all accrued interest, shall be paid to Defendant Mary Ella Thomas.

**IT IS SO ORDERED.**

### FINAL JUDGMENT

For the reasons set forth in the Order issued by the Court this day, the Court hereby **GRANTS** Plaintiff Connecticut General's Motion to Dismiss and request for Attorneys' Fees. Accordingly, Connecticut General is hereby **DISMISSED** as a party to this action, and attorneys' fees and costs in the total amount of $10,506.43 shall be paid to Connecticut General from the interpled funds deposited by Connecticut General into the registry of this Court in connection with this case.

As also set forth in the Order issued by the Court this day, the Court likewise **GRANTS** Defendant Mary Ella Thomas's Motion for Summary Judgment and Thomas's Request for Sanctions. Accordingly, after the payment set forth above of $10,506.43 to Connecticut General, the remaining balance of the interpled funds deposited by Connecticut General into the registry of this Court, plus all accrued interest, shall be paid to Defendant Mary Ella Thomas.

As further set forth in the Order issued by the Court this day, the Court hereby **DENIES** all motions of Defendant Lydia Jean Green. Ms. Bernadette Johnlewis, attorney for Defendant Green, is hereby **ORDERED** to pay to Defendant Thomas $750.00, representing the reasonable fees incurred by Thomas's attorney in opposition to Green's Motion for Sanctions Pursuant to Rule 11. Said amount shall be paid directly by Ms. Johnlewis to Defendant within fifteen days of the date hereof.

Except as otherwise provided herein, all parties are **ORDERED** to bear their own costs incurred herein to date.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**