MOODY NATIONAL BANK OF
GALVESTON Plaintiff,

v.

GE LIFE AND ANNUITY
ASSURANCE COMPANY
Defendant.

No. G–02–531.

United States District Court,
S.D. Texas,
Galveston Division.

June 27, 2003.

Andrew J. Mytelka, Steven Carl Windsor, Greer, Herz & Adams, Galveston, TX, for Moody National Bank of Galveston.

Andrew C. Whitaker, Figari Davenport, et al., Dallas, TX, for GE Life and Annuity Insurance Company.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff Moody National Bank of Galveston ("Moody Bank" or "Bank") brings this lawsuit against Defendant GE Life and Annuity Assurance Company ("GELAAC") seeking to recover $499,212.19 that GELAAC allegedly owed to Moody Bank upon the death of Ronald M. Schwartz ("Schwartz") on April 6, 2002. Now before the Court is GELAAC's Motion for Summary Judgment, Moody Bank's timely Response, and GELAAC's timely Reply. For the reasons articulated below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DISMISSES** the case **WITH PREJUDICE.**

### I. Factual Background

In November of 1986, The Life Insurance Company of Virginia, GELAAC's predecessor, issued a life insurance policy ("Policy") on the life of Ronald Schwartz. The Policy had a face value of $500,000.00 and was issued to Schwartz's company, Schwartz, Inc. In 1989, Schwartz, Inc. sought to obtain a loan, including a line of credit, from Moody Bank. Victor Pierson, a loan officer with Moody Bank, recommended a $375,000.00 loan and a $50,000.00 line of credit, which the Loan Committee approved. As collateral, the Bank required-among other things-that Schwartz, Inc. assign to it a life insurance policy on Schwartz's life with a value of $400,000.00. In a document entitled Assignment of Life Insurance Policy as Collateral ("Assignment"), signed May 30, 1990 and acknowledged by GELAAC on June 29, 1990, Schwartz, Inc. assigned certain rights under the Policy to Moody Bank. The Assignment, which covered existing and future obligations of Schwartz, Inc. to Moody Bank, was made "subject to all the terms and conditions of the Policy and to all superior liens, if any, which the Insurer may have against the Policy." The Assignment explicitly provided that "[Moody Bank] shall be under no obligation to pay any premium," and GELAAC "shall not be obligated to notify [Moody Bank] regarding failure to pay premiums, lapse of the policy or exercise of any nonforfeiture option."

In December of 1990, Moody Bank renewed Schwartz, Inc.'s loan and increased its line of credit from $50,000.00 to $400,000.00. The assignment of Schwartz's life insurance policy remained required collateral. Although the Assignment signed in May of 1990 and acknowledged in June of 1990 covered existing and future liabilities, Moody Bank nevertheless sent another assignment document to GELAAC for acknowledgment. On February 11, 1991, in response to the request for a second acknowledgment of the assignment, Teresa Brissette, a GELAAC employee, sent the Bank the following letter ("1991 Letter"), which stated in its entirety:

Dear Sirs:

As requested, the following change(s) have been recorded on the above policy(s), thereby revoking all prior designations.

Our records indicate that this policy is assigned to your bank. We are returning the attached Assignment unacknowledged. At the Insured's death, the total amount of indebtedness will be paid to Moody National Bank.

If you should have any questions, please write or call me at our Home Office. We appreciate your business and look forward to serving you.

Sincerely,

Teresa Brissette

Extension 6940

Title Team

Policyowner Service

Moody Bank did not call or write GEL-AAC to ask any questions. In fact, from February 1991 until early 2002, Moody Bank did not communicate with GELAAC. However, Moody Bank now claims that this letter constituted an irrevocable promise by GELAAC to pay the Bank the entire amount of Schwartz, Inc.'s indebtedness to the Bank upon Schwartz's death, regardless of the status of the Assignment or the Policy at that time (i.e., *even if* the Policy had lapsed, which, in fact, occurred).

In August of 1993, Pierson prepared an application to consolidate Schwartz, Inc.'s business loan and line of credit into one loan for $539,242.35. Pierson listed two new sources of collateral on the application: subordination of Schwartz's interest in a note payable to him by his company, and assignment of Schwartz's interest in his father's estate. Notably, Pierson did not include GELAAC's "irrevocable promise" to pay the *entire amount* of Schwartz, Inc.'s indebtedness. Pierson prepared *another* assignment document, but it is unclear whether this document was ever sent to GELAAC for acknowledgment. During the life of its loan to Schwartz, Inc., Moody Bank made periodic assessments of the loan, but none of the records regarding the loan refer to the alleged unconditional promise by GELAAC to pay the entire amount of Schwartz, Inc.'s debt to the Bank.

Schwartz, Inc. was often late paying the premiums on the Policy, and GELAAC, on numerous occasions, sent notices to the company notifying it that the Policy was in danger of lapsing. For example, on August 6, 1997, the Policy lapsed due to Schwartz, Inc.'s failure to pay its premium. GELAAC sent the company a letter notifying it of the lapse and describing the requirements for reinstating the Policy.

Schwartz, Inc. complied with these requirements, and the Policy was reinstated in December of 1997. On April 6, 1999, the Policy again lapsed for failure to pay the premiums. GELAAC again sent a letter notifying Schwartz, Inc. of the lapse and the steps for reinstating the Policy, but the company did not respond, and the Policy was not reinstated.

In early 2002, Schwartz was near death, and Moody Bank contacted GELAAC to find out how to collect. GELAAC told the Bank that the Policy had lapsed in 1999. The Bank, through its lawyers, complained that GELAAC never notified it of the lapse or the termination, and the Bank demanded that GELAAC reinstate the Policy. On April 6, 2002, before GELAAC accepted or rejected the Bank's demand, Schwartz died. On May 1, 2002, Moody Bank sent GELAAC a letter demanding payment of $499,212.19. GELAAC refused to pay, and Moody Bank brought this lawsuit.

## II.  Analysis

### A.  Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.,* 477 U.S. at 248, 106 S.Ct. at 2510. The mere *existence* of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over

facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.,* 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.,* 799 F.Supp. 691, 694 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

▪ Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *see also* Fed. R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See*

*Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont De Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). The Court accepts the evidence of the nonmoving party and draws all justifiable inferences in favor of that party. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56.[1]

### B. Breach of Contract

▪ GELAAC argues that Moody Bank cannot recover for breach of the insurance contract. Moody Bank responds that its lawsuit is not based on a breach of contract theory. Thus, the Court will only briefly address GELAAC's argument. Moody Bank claims that it is entitled to payment from GELAAC based on one sentence in the three-paragraph 1991 Letter, which was written to refuse acknowledgment of Moody Bank's duplicative collateral assignment document. That sentence states, "At the Insured's death, the total amount of indebtedness will be paid to Moody National Bank." Certainly, if this had been intended as an unconditional agreement to repay the loan, regardless of the continuation of the Policy, it would have changed the existing agreement between the Parties (the Assignment), which was explicitly made "subject to all the

---

1. Moody Bank objects to the declaration of William E. Daner ("Daner"), tendered to the Court by GELAAC in support of its Motion for Summary Judgment. Moody Bank asks the Court to strike Daner's declaration (1) because GELAAC failed to identify Daner, an associate general counsel at GELAAC, as a "person with knowledge" of discoverable information in its initial disclosures, and (2) because Daner's declaration is not relevant to the disputed issues. As this Court has stated, Rule 56 of the Federal Rules of Civil Procedure contains no requirement that "affiants be disclosed prior to filing a summary judgment motion ...." *Conn. Gen. Life Ins. Co. v. Thomas,* 910 F.Supp. 297, 303 (S.D.Tex.1995) (Kent, J.). Moody Bank presents no evidence that Daner's declaration was presented in bad faith or solely for the pur-

pose of delay. *See* Fed.R.Civ.P. 56(g); *see also Thomas,* 910 F.Supp. at 303 n. 8 ("In fact, it is difficult for the Court to envision a situation where affidavits filed by a party in support of that party's motion for summary judgment could somehow delay the resolution of a case. It seems to the Court that only affidavits submitted in opposition to a summary judgment motion could delay the resolution of a case, by falsely creating an issue of fact and thus precluding the granting of summary judgment."). Further, under the Docket Control order in this case, discovery did not close until June 20, 2003. Moody Bank has had ample time to cope with any surprise created by the Daner declaration. Thus, the Court will consider the declaration to the extent it is relevant.

terms and conditions of the Policy." But such an attempted modification would have been ineffective because "Texas law is clear that for a contractual modification to be effective, 'it must satisfy the elements of a contract: a meeting of the minds supported by consideration.'" *Scenic Galveston, Inc. v. Infinity Outdoor, Inc.*, 151 F.Supp.2d 812, 817 (S.D.Tex.2001) (quoting *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 228 (Tex.1986)). "Consideration is a present exchange bargained for in return for a promise. It consists of either a benefit to the promisor or a detriment to the promisee. The detriment must induce the making of the promise, and the promise must induce the incurring of the detriment." *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991) (internal citations omitted). Here, the Bank alleges that GELAAC simply made an unconditional promise to pay off Schwartz, Inc.'s debt. The Bank does not allege that it offered anything in return for this promise, and there is no evidence of consideration in the record. Thus, the Court agrees that to the extent the 1991 Letter is alleged to be a modification of the existing contract-the Assignment-it fails for lack of consideration.

*C. Promissory Estoppel*

■ The theory under which Moody Bank seeks to recover is promissory estoppel. The Bank claims that it detrimentally relied on GELAAC's alleged unconditional promise to repay the total amount of Schwartz, Inc.'s indebtedness to the Bank upon Schwartz's death. "The requisites of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *English v. Fischer*, 660 S.W.2d 521, 524 (Tex.1983); *see Bailey v. City of Austin*, 972 S.W.2d 180, 192 (Tex.App.—Austin 1998, pet. denied) ("Although promissory estoppel is normally a defensive theory, it may be

asserted by a plaintiff as an affirmative ground for relief."). The claimed reliance must be both reasonable and justified. *See Gilmartin v. KVTV–Channel 13*, 985 S.W.2d 553, 558 (Tex. App—San Antonio 1998, no pet.).

■ The sole basis for the Bank's claim against GELAAC is the one-page 1991 Letter's middle paragraph, which states in its entirety: "Our records indicate that this policy is assigned to your bank. We are returning the attached Assignment unacknowledged. At the Insured's death, the total amount of indebtedness will be paid to Moody National Bank." The Bank incredibly asserts that by this paragraph *GELAAC* promised to pay the entire amount that *Schwartz, Inc. owed the Bank* upon Schwartz's death, *regardless* of the status of Schwartz's life insurance policy with GELAAC. However, the Court finds it *much* more likely that when GELAAC stated that "[a]t the Insured's death, the total amount of indebtedness will be paid to Moody National Bank," GELAAC meant that it would pay the total amount of *its* indebtedness, the only source of which could be the Policy. Because the Policy lapsed, the amount of GELAAC's indebtedness at Schwartz's death was *nothing*. Any other reading of the sentence is manifestly unreasonable.

However, assuming for the sake of argument that such a promise was made, the Court finds that Moody Bank has also failed to create a fact issue regarding its alleged reliance. The Bank's purported interpretation of the 1991 Letter-that is, that GELAAC would pay Schwartz, Inc's debt to the Bank in full-would have rendered unnecessary any other sources of collateral. However, as GELAAC points out, the Bank never listed the letter as a source of collateral on any document. Further, in 1992, after the receipt of GELAAC's alleged promise to pay the entire

debt, the Bank downgraded its loans to Schwartz, Inc. twice, first to level "D", meaning that the loans were "inadequately protected by the current worth and paying capacity of the obligor *or collateral*" (emphasis added), and then to level "E," meaning that the loans were "exhibiting weaknesses which make collection in full highly questionable and improbable." If the Bank truly relied on the 1991 Letter as an unconditional promise by GELAAC to repay Schwartz, Inc.'s debt in full, why did the Bank (a) never list the 1991 Letter as a source of collateral, (b) list the loans as inadequately protected by collateral, and (c) determine that collection in full was improbable? The Bank's only response to this overwhelming showing that it did not rely on the 1991 Letter is Pierson's testimony that, in fact, he and the Bank did rely on the Letter. Reliance is not established by alleging feelings and beliefs, but by showing actions or forbearance in light of the promise. *See Wheeler v. White*, 398 S.W.2d 93, 97 (Tex.1965) ("[W]here the promisee has *acted* in reliance upon a promise to his detriment, the promisee is to be allowed to recover no more than reliance damages measured by the detriment sustained.") (emphasis added); *see also, e.g., Pair–A–Dice Acquisition Partners, Inc. v. Bd. of Trs. of Galveston Wharves*, 185 F.Supp.2d 703, 708 (S.D.Tex. 2002) (Kent, J.) ("Although promissory estoppel is normally a defensive theory, Texas law provides that it is an available cause of action for a promisee who *acted* to its detriment in reasonable reliance on an otherwise unenforceable promise."). Thus, the Court finds that Pierson's bald assertion that he relied on the alleged promise does not create a fact issue. *See, e.g., Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56 (stating that the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial' ") (quoting Fed.R.Civ.P. 56(e)).

■ Further, assuming solely for the sake of argument that the Bank did rely on the letter, such reliance was unreasonable. *See Gilmartin*, 985 S.W.2d at 558. First, the Court must note that it is almost inconceivable that GELAAC would make such a tremendous gratuitous promise to the Bank in *exchange for nothing* and *without negotiation.* The Court also notes that the Assignment that governed the Parties' relationship was explicitly "subject to all the terms and conditions of the Policy," and explicitly stated that "[GELAAC] shall not be obligated to notify [Moody Bank] regarding failure to pay premiums [or] lapse of the Policy." Upon receipt of the 1991 Letter, which the Bank allegedly interpreted as a sudden, unilateral, incredibly generous promise to forget about the Assignment and the Policy and simply pay in full another party's debts to the Bank, the Bank did nothing to follow up-it did not seek to clarify whether GELAAC was actually making such an extraordinary change in the Parties' relationship. The Bank did not write or call with questions regarding this complete revision of the Parties' obligations as the author of the 1991 Letter asked. The Court finds such behavior on the Bank's part unreasonable as a matter of law. *Cf. Brock v. Baskin Robbins, USA, Co.*, No. 5:99–CV–274, 2003 WL 21309428, at *4–5 (E.D.Tex. Jan.17, 2003) (granting the defendant's motion for summary judgment where the plaintiffs' only evidence of reliance on statements that contradicted the contract were the plaintiffs' self-serving affidavits).

■ Finally, the Court finds that Moody Bank has failed to create a fact issue regarding any damages it might have suffered as a result of its alleged reliance on the alleged promise. When asked whether the 1991 Letter "had any impact on the

Bank's willingness to lend additional money to Schwartz, Inc." Pierson replied that it did not. Further, the Bank did not lend any additional money to Schwartz, Inc. after receiving the 1991 Létter. Given that the Bank did not lend any more money to Schwartz, Inc. as a result of the alleged promise, the Court is unclear what reliance damages the Bank is claiming it suffered.

### D. Negligent Misrepresentation

Moody Bank also brings a cause of action against GELAAC for negligent misrepresentation. "The elements of negligent misrepresentation are (1) a representation made by the defendant in [the] course of the defendant's business, or in a transaction in which the defendant has a proprietary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or [communicating] the opinion; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation." *TIG Ins. Co. v. Sedgwick James of Washington,* 276 F.3d 754, 763 (5th Cir.2002) (citing *Fed. Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991)). The final element "has two aspects: 'the plaintiff must in fact have relied; and this reliance must have been reasonable.'" *Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.,* 88 F.3d 347, 358 (5th Cir.1996) (quoting *Geosearch, Inc. v. Howell Petroleum Corp.,* 819 F.2d 521, 526 (5th Cir.1987) (applying Texas law)). "In other words, 'there must be a reasonable relation between the contents of the defendant's misrepresentation and the action the plaintiff took in reliance.'" *Id.* (quoting *Geosearch,* 819 F.2d at 526). "'The justifiableness of the reliance is judged in light of the plaintiff's intelligence and experience.'" *Id.* (quoting *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.,* 81 F.3d 606, 615 (5th Cir.

1996)). As the Court explained when analyzing the promissory estoppel claim, Moody Bank has not raised a fact question concerning its actual reliance on the alleged representation. Further, the Court has determined that any reliance was unreasonable, particularly when judged in light of the Bank's presumed intelligence and experience. Finally, as the Court discussed, Moody Bank has failed to show any action or inaction that it took in reliance on the alleged promise or misrepresentation that resulted in a pecuniary loss. Thus, the Bank's negligent misrepresentation claim must also fail.

### III. Conclusion

For all of the reasons set forth above, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment and **DISMISSES WITH PREJUDICE** each and every one of Plaintiff's claims against Defendant. Each Party is to bear its own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**