**In re MERCEDES–BENZ ANTI–TRUST LITIGATION.**

**Master No. 99–4311(WHW).**

United States District Court,
D. New Jersey.

Jan. 6, 2005.

---

Lisa J. Rodriguez, Esq., Rodriguez & Richards, LLC, Haddonfield, NJ, Paul T. Gallagher, Esq., Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, D.C., Anthony J. Bolognese, Esq., Bolognese & Assocs., L.L.C., Philadelphia, PA, Jeffrey Corrigan, Esq., Spector, Roseman & Kodroff, P.C., Philadelphia, PA, for Plaintiffs.

James Moss, Esq., Stacy Rosenberg, Esq., Herrick, Feinstein LLP, New York, NY, Steven M. Edwards, Esq., Hogan & Hartson, L.L.P., New York, NY, for Mercedes–Benz Manhattan, Inc.

Charles Caranicas, Esq., Ronald B. Weisenberg, Esq., Vedder, Price, Kaufman & Kammholz, Livingston, NJ, John H. Eickemeyer, Esq., Vedder, Price, Kaufman & Kammholz, New York, NY, for Sheft Kahn & Company.

Andrew P. Napolitano, Esq., Fischbein, Badillo, Wagner, Harding, New York, NY, for Benzel–Busch Motor Corp.

Jeffrey Heilman, Esq., Zeisler & Zeisler, Bridgeport, CT, Michael McLaughlin, Esq., Wasserman, Jurista & Stolz, Millburn, NJ, for Continental Motors, Inc.

Michael Morea, Esq., Cole, Schotz, Meisel, Forman & Leonard P.C., Hackensack, NJ, for Millennium Automotive Group.

Robert J. Burzichelli, Esq., Theodore C. Richman, Esq., Soloman, Richman, Greenberg P.C., Lake Success, NY, for Competition Imports.

Eric L. Chase, Esq., Bressler, Amery & Ross, Florham Park, NJ, for David Michael Motor Car.

Leonard A. Bellavia, Esq., John Ciulla, Esq., Bellavia & Kassel, P.C., Mineola, NY, for Sovereign Motor Cars, Ltd.

Irvin M. Freilich, Esq., Robertson, Freilich, Bruno & Cohen, L.L.C., Newark, NJ, Laurence B. Orloff, Esq., Orloff, Lowenbach, Stifelman & Siegel, Roseland, NJ, for Kea Motor Car Corp.

Stephen N. Dermer, Esq., Lowenstein Sandler, P.C., Roseland, NJ, for Mercedes–Benz of Morristown.

Peter Efros, Esq., John W. Wopat, III, Esq., Efros & Wopat, Red Bank, NJ, for Contemporary Motor Cars, Inc.

Jay Friedrich, Esq., Gallo, Geffner, Fenster, P.C., Paramus, NJ, for Prestige Motors, Inc.

Robert J. Kipnees, Esq., Greenbaum, Rowe, Smith, Ravin & Himmel, Iselin, NJ, for Competition Motors.

Charles T. Locke, III, Esq., Locke & Herbert, New York, NY, for Silver Star Motors, Inc.

Thomas Madden, Esq., Hack, Piro, O'Day, Merklinger, Wallace & McKenna, Florham Park, NJ, for Beifus Motors, Inc.

Martin G. Margolis, Esq., The Margolis Law Firm, P.A., Verona, NJ, for Ray Catena Motor Car Corp.

Frederick Newman, Esq., Salamon, Gruber, Newman & Blaymore, PC, Roslyn Heights, NY, John A. Adler, Esq., Heliring, Lindeman, Goldstein & Siegal LLP, Newark, NJ, for Helms Brothers, Inc.

Raymond A. Peck, Esq., Southampton, NY, for Country Imported Car Corp.

Stephen G. Phillips, Esq., Watson Enterprises Incorporated, Greenwich, CT, for Mercedes–Benz of Greenwich.

Robert B. Nussbaum, Saiber, Schlesinger Satz & Goldstein, LLC, Newark, NJ, Jonathan S. Feinsilver, Esq., Jonathan S. Feinsilver, P.C., New York, NY, for Lakeview Auto Sales & Service.

Patrick M. Reilly, Esq., DelBello, Donnellan, Weingarten, Tartaglia, Wise & Wiederkehr, LLP, White Plains, NY, Franklyn C. Steinberg III, Esq., Law Offices of Franklyn C. Steinberg III, Somerville, NJ, for Estate Motors, Inc.

Michael G. Santangelo, Esq., Anthony Mangone, Esq., Servino, Santangelo & Randazzo, LLP, White Plains, NY, for Pepe Motors Corp.

James Serota, Esq., Philip R. Sellinger, Esq., Harry Plmm, Esq., Greenberg Traurig, LLP, New York, NY, for Friendly Motor Cars, Inc., Continental Motors, Inc., Country Imported Car Corp., David Michael Motor Car, Mercedes–Benz of Greenwich, Millennium Automotive Group, Pepe Motors Corp., Princeton Motor Sports, Inc, Sovereign Motor Cars, Ltd.

John S. Siffert, Esq., Lankier Siffert & Wohi LLP, New York, NY, for Rallye Motors, Inc.

David S. Stone, Esq., Boics Schiller & Flexner, Short Hills, NJ, David M. Taus, Esq., Francis J. DeVito, P.C., Hackensack, NJ, for Globe Motor Car Co.

Gordon C. Strauss, Esq., Princeton, NJ, for Princeton Motor Sports, Inc.

## OPINION

WALLS, District Judge.

Plaintiffs move to strike the affidavits of Anthony P. LaSpada and R. Craig Romaine filed in support of defendants' motion for partial summary judgment. The motion is decided without oral argument pursuant to Fed.R.Civ.P. 78.

The facts of the case are outlined in a number of previous opinions and will not be restated here. In response to defendants' motion for partial summary judgment, plaintiffs filed a motion to strike the affidavits of Anthony P. LaSpada and R. Craig Romaine that were submitted in support of defendants' motion. LaSpada is the Associate General Counsel and Assistant Secretary for MBUSA, LLC, the entity formerly known as MBUSA. In his affidavit, he testifies to the ownership of MBUSA, LLC and its predecessor entities and the relationship between MBUSA, LLC and MBCC. Romaine is an expert in economics. In his affidavit, he explores the possibility that any alleged overcharge would be passed on to lessees. Plaintiffs object to such affidavits on the ground that MBUSA never disclosed the identity of such persons or that these persons had knowledge concerning the issues in defendants' summary judgment motion. Plaintiffs argue that MBUSA was obligated to disclose the identities of such persons without awaiting a discovery request under Rule 26(a) and that when plaintiffs posed interrogatories to MBUSA that asked for such information, MBUSA again failed to disclose the information.

Plaintiffs rely on Fed.R.Civ.P. 37(c)(1) which provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Rule 26(a) lists the types of discovery that a party must provide to other parties in the case:

(1) Initial Disclosures. Except in categories of proceedings specified in Rule 26(a)(1)(E), or to the extent otherwise stipulated or directed by order, a party must, without awaiting a discovery request, provide to other parties:

(A) the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information; ...

With respect to expert discovery, Rule 26 also addresses the disclosure of expert evidence:

(2) Disclosure of Expert Testimony.

(A) In addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used *at trial* to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.

(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

(C) *These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial or, if the evidence is intended solely to contradict or rebut evidence on*

the same subject matter identified by another party under paragraph (2)(B), within 30 days after the disclosure made by the other party. The parties shall supplement these disclosures when required under subdivision (e)(1).

Fed.R.Civ.P. 26(a)(2) (emphasis added). Rule 26(e)(1) and (2) addresses a party's duty to supplement disclosures:

> (e) Supplementation of Disclosures and Responses. A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances:
>
> > (1) A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. With respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty extends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due.
> >
> > (2) A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Because Rule 37(c)(1) applies to disclosures required under Rule 26(a), (e)(1) and (2), Rule 37(c)(1) can be used to preclude a party from using evidence that it either should have disclosed as an initial disclosure, as expert testimony, or as part of a supplemental disclosure.

During the discovery period, plaintiffs served on MBUSA plaintiffs' second set of interrogatories. Interrogatories no. 11–13 requested that MBUSA set forth all facts supporting its position in the summary judgment motion:

### Interrogatory No. 11

Set forth all facts which support your position that some or all lessees of new Mercedes–Benz vehicles (a) are not, or might not be, "direct purchasers" of Mercedes–Benz vehicles under Illinois Brick, and/or (b) are not, or should not be, a member of the Class.

### Interrogatory No. 12

Set forth all facts as to why (a) MBCC, as lessor, is (i) a direct purchaser of a Mercedes–Benz vehicle and/or (ii) is an owner of a Mercedes–Benz vehicle and (b) why a lessor, other than MBCC, is (i) a direct purchaser of Mercedes–Benz vehicles for which it is a lessor, and/or (ii) is an owner of a Mercedes–Benz vehicle for which it is a lessor.

### Interrogatory No. 13

Set forth all facts that you contend support your position that no exception to the Illinois Brick doctrine applies to lessees of new Mercedes–Benz vehicles, including the exceptions noted by the Court in denying the motion to dismiss at *In re Mercedes–Benz Anti–Trust Litigation*, 157 F.Supp.2d 355 (D.N.J.2001), specifically:

> (a) that MBCC was or acted as an agent of the New York Region MB Center(s) and/or MBUSA;
>
> (b) that MBCC is owned or controlled by MBUSA;
>
> (c) that MBCC and other lessors were merely financiers of the sale of the vehicles.

(Pls.' Ex. B). MBUSA's initial response to these three interrogatories was the same: "[d]efendant objects to this interrogatory because it seeks information protected by the attorney-client privilege and work-product privileges. Defendant further objects to this interrogatory on the basis that it seeks legal conclusions." (*Id.*). MBUSA later filed

amended responses to the same interrogatories: [1]

### Amended Response to Interrogatory No. 11

MBUSA objects to this interrogatory because it seeks information protected by the attorney-client privilege and work-product privileges. MBUSA further objects to this interrogatory on the basis that it seeks legal conclusions. Subject to and without waiving the foregoing, MBUSA states lessees did not purchase new Mercedes–Benz vehicles during the class period and that lessors purchased new Mercedes–Benz vehicles from the dealer-defendants in this case that lessees leased from lessors. These are among the facts that establish that lessees cannot assert the claim alleged in the Second Consolidated Amended Class Action Complaint and are not properly members of the class. MBUSA continues its investigation of facts that may be relevant to any contention that plaintiffs may make that lessees are entitled to assert the claim alleged and are properly members of the plaintiff class although they did not purchase new Mercedes–Benz vehicles.

### Amended Response to Interrogatory No. 12

MBUSA objects to this interrogatory because it seeks information protected by the attorney-client privilege and work-product privileges. MBUSA further objects to this interrogatory on the basis that it seeks legal conclusions. Subject to and without waiving the foregoing objection, MBUSA states that MBCC and other lessors (collectively, "lessors") purchased new Mercedes–Benz vehicles from the dealer defendants in this case. MBUSA refers plaintiffs to documents produced by Hann Financial Services Corporation, Chase Manhattan Automotive Finance Corporation, and MBCC in this litigation as well as documents contained in deal jackets made available or produced to plaintiffs. MBUSA continues its investigation of facts that may be relevant to any contention that a lessor is not a "direct purchaser" or is not an "owner" of a Mercedes–Benz vehicle.

### Amended Response to Interrogatory No. 13

MBUSA objects to this interrogatory because it seeks information protected by the attorney-client privilege and work-product privileges. MBUSA further objects to this interrogatory on the basis that it seeks legal conclusions. MBUSA further objects to this interrogatory to the extent it suggests each of the theories identified above is an "exception" to *Illinois Brick*. Subject to and without waiving the foregoing, MBUSA states that, to date, there are no facts in the record to support the position that any recognized exception to *Illinois Brick* permits lessees to assert the claim alleged. With respect to subpart (a), MBUSA objects to the extent the request seeks information outside the possession, custody or control of MBUSA. MBUSA specifically objects to the extent that the request seeks information "that MBCC was or acted as an agent of the New York Region MB Center(s)." MBUSA further states that it has identified no facts to support the conclusion that that "MBCC was or acted as an agent of the New York Region MB Center(s) and/or MBUSA" and refers plaintiffs to documents produced by MBUSA in response to Plaintiffs' Fifth Request for the Production of Documents including, but not limited to, MB118354–118401 and refers plaintiffs to documents produced by MBCC in response to the subpoena served by plaintiffs. With respect to subpart (b), MBUSA refers plaintiffs to its response to Document Request Number 5 of Plaintiffs' Fifth Request for the Production of Documents directed to MBUSA in which it stated "Mercedes–Benz Credit is currently part of DaimlerChrysler Services which is a subsidiary of DaimlerChrysler North America Holding Corporation. DaimlerChrysler North America Holding Corporation also holds Mercedes–Benz USA, LLC. MBUSA states that at no time during the class period did MBUSA hold an ownership interest in MBCC." In addition, MBUSA refers plaintiffs to documents produced by MBUSA in response to Plain-

---

**1.** The Court can not help but observe that MBUSA's amended responses, 11, 12 and 13, are the children of obfuscaty.

tiffs' Fifth Request for the Production of Documents including, but not limited to MB118354–118401. With respect to subpart (c), MBUSA states there are no facts to support the conclusion that lessors acted "merely . . . [as] financiers of the sale of the vehicles." MBUSA refers plaintiffs to its amended response to interrogatory number 12 above as well as to the documents produced by MBCC, Chase Manhattan Automotive Finance Corporation and Hann Financial Service Corporation. MBUSA continues to investigate facts that may be relevant to any contention that plaintiffs may make that an exception to *Illinois Brick* applies in this case to lessees of new Mercedes–Benz vehicles.

### Whether MBUSA was Required to Disclose the Identities and Information Proffered by LaSpada and Romaine

Plaintiffs contend that MBUSA should have disclosed the identities of LaSpada and Romaine and the evidence they proffer in the answers to the interrogatories. Plaintiffs claim that they have been prejudiced by MBUSA's failure to disclose such information in that they were unable to either take the affiants' depositions or ask questions at the depositions of the representatives from the leasing companies about the factual bases underlying Romaine's opinion.

MBUSA's response is twofold: First, it argues that it was not required to disclose the identity of the affiants before filing the affidavits. Second, it contends that even if it were required to do so, its failure is harmless and therefore the motion to strike should be denied.

■ MBUSA charges that there is no requirement under Rule 56 that affiants be disclosed before filing a motion for summary judgment. MBUSA is correct that Rule 56 does not itself impose such a requirement on the parties. MBUSA relies on *Moody Nat. Bank of Galveston v. GE Life and Annuity Assur. Co.*, 270 F.Supp.2d 875 (S.D.Tex. 2003), to support its position. In *Moody* the plaintiff objected to a declaration tendered to the court in support of a summary judgment motion on the ground that the defendant failed to identify the declarant as a "person with knowledge" of discoverable information in its initial disclosures. 270 F.Supp.2d at

879 n. 1. The court stated that "Rule 56 of the Federal Rules of Civil Procedure contains no requirement that 'that affiants be disclosed prior to filing a summary judgment motion . . .' " and denied the motion to strike. *Id.* (quoting *Conn. Gen. Life Ins. Co. v. Thomas*, 910 F.Supp. 297, 303 (S.D.Tex. 1995)).

With respect to LaSpada, MBUSA argues that he was not someone whom it was required to identify in initial disclosures. It charges that because it is obvious that various representatives from MBUSA would have some knowledge regarding the corporate relationship between MBUSA and MBCC, it is not required to list out each individual with such knowledge. MBUSA also contends that it should not be precluded from filing LaSpada's affidavit just because plaintiffs failed to notice a deposition of a MBUSA 30(b)(6) witness with knowledge of the relationship between MBUSA and MBCC.

As for Romaine, MBUSA contends that the Case Management Order does not require it to make disclosures of expert testimony under Rule 26(a)(2) until November 15, 2004. It also notes that Rule 26(a)(2) deals specifically with disclosure of the identity of experts to be used at trial. It contends that there is no separate requirement for the disclosure of experts in connection with a party's initial disclosures under Rule 26(a)(1). MBUSA also notes that while the Court had separately required disclosure of expert witnesses whose opinions were to be provided in connection with class certification, no such order was entered for the *Illinois Brick* issue.

The Third Circuit has directed the district courts to "exercise particular restraint in considering motions to exclude evidence." *ABB Air Preheater, Inc. v. Regenerative Environmental Equipment Co., Inc.*, 167 F.R.D. 668, 671–72 (D.N.J.1996) (citing *In re TMI Litig.*, 922 F.Supp. 997, 1003–04 (M.D.Pa. 1996); *DiFlorio v. Nabisco Biscuit Co.*, 1995 WL 710592 at *2 (E.D.Pa. Nov.13, 1995)). "The Third Circuit has, on several occasions, manifested a distinct aversion to the exclusion of important testimony absent evidence of extreme neglect or bad faith on the part of

the proponent of the testimony." *Id.* (citing *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 791–92 (3d Cir.1994), cert. denied, 513 U.S. 1190, 115 S.Ct. 1253, 131 L.Ed.2d 134 (1995); *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 905 (3d Cir. 1977), overruled on other grounds, *Goodman v. Lukens,* 777 F.2d 113 (3d Cir.1985), aff'd, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); *Dudley v. South Jersey Metal, Inc.,* 555 F.2d 96, 99 (3d Cir.1977)).

■ Keeping these principles in mind, the Court finds that MBUSA was required to disclose the identify of LaSpada but not the identity of Romaine. The Court is not persuaded by MBUSA's argument that the identity of LaSpada does not fall within the initial disclosures just because there may be others at MBUSA with the same information. MBUSA cites no legal support for this proposition and the Court finds none. This is not to say that MBUSA should have disclosed the identity of LaSpada when the initial disclosures were originally made. That a separate discovery period was allotted to deal with the *Illinois Brick* issue complicates these discovery matters. Rule 26(e), however, is flexible enough to cover such a situation as is presented here. When discovery of the *Illinois Brick* issue began, MBUSA should have supplemented its initial disclosures under Rule 26(e) to cover its *Illinois Brick* defense.

■ As for whether MBUSA was required to identify Romaine or the subject matter of his affidavit, the Court finds that defendant was under no duty to do so under the circumstances. Rule 26(a)(2) specifically applies to disclosure of experts to be used at trial and the Case Management Order did not require expert disclosure until November 15, 2004, a date later than the deadline imposed in the same order for defendants' filing of an *Illinois Brick* motion. The Court does not disagree with plaintiffs reading of Rule 37(c)(1) as applying to motions for summary judgment. But because Rule 37(c)(1) specifically deals with expert disclosures under Rule 26(a)—disclosures of experts to be used at trial—and such disclosures in this case were not required until November, the Court finds itself in an odd situation. If the Court were to construe MBUSA's use of an expert affidavit as falling under Rule 26(a), then pre-sumably defendants would not have had to disclose Romaine's identity until November 15, 2004. Since that date was in the distant future from when defendants' motion for partial summary judgment was filed, the Court cannot say that MBUSA failed to disclose expert testimony in accordance with Rule 26(a).

Plaintiffs in their reply brief argue that MBUSA had a duty to disclose Romaine's identity during the *Illinois Brick* discovery period because Rule 26(a)(2) governing expert disclosure begins by stating that "[i]n addition to the disclosures required by paragraph (1)...." In other words, plaintiffs apparently contend that Romaine should have been disclosed as part of the initial disclosures under Rule 26(a)(1). That Romaine, an individual being used as an expert in economics, should fall within the category of persons covered by the initial disclosure rule is an assertion the Court is not willing to endorse. The Federal Rules of Civil Procedure provide a separate rule governing the disclosure of expert testimony. While Rule 26(a)(2) is limited to those experts who may be used at trial, plaintiffs cite no legal authority to support the proposition that experts who are not going to be used at trial but are used to support a summary judgment motion must be disclosed under Rule 26(a)(1). Because the rules do not support plaintiffs' argument, the Court finds that MBUSA was not required to disclose the identity of Romaine or the subject matter of his affidavit before filing. The Court recognizes that the three-month discovery period allotted for the *Illinois Brick* issue complicates how the discovery rules should be applied here.

### Whether MBUSA's Failure to Disclose was Harmless

■ "Rule 37 is written in mandatory terms, and 'is designed to provide a strong inducement for disclosure of Rule 26(a) material.'" *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.,* 60 F.3d 153, 156 (3d Cir.1995) (quoting *Harlow v. Eli Lilly & Co.,* 1995 WL 319728 at *2 (N.D.Ill. May 25, 1995)). "Nonetheless, the rule expressly provides that sanctions should not be imposed if substantial justification exists for the failure to disclose, or if the failure to disclose was

harmless." *Id.* District courts, therefore, have some discretion under the rule. *Id.* The rule does not define harmless, but the 1993 Advisory Committee Notes give examples of situations in which the failure to disclose may either be substantially justified or harmless: "the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement to make disclosures." In reviewing whether to uphold a district court's determination that a failure to disclose was harmless, the Third Circuit has noted four factors that the Seventh Circuit has identified as helpful in deciding what is harmless under Rule 37(c)(1): (1) prejudice or surprise to party against whom evidence is offered; (2) ability of party to cure prejudice; (3) likelihood of disruption to trial; and (4) bad faith or willfulness involved in not complying with the disclosure rules. *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir.1995) (citing *Bronk v. Ineichen*, 54 F.3d 425, 432 (7th Cir.1995)). The Third Circuit has also considered the importance of the evidence to the proffering party's case. *Astrazeneca AB v. Mutual Pharmaceutical Co., Inc.*, 278 F.Supp.2d 491, 504 (E.D.Pa.2003) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904 (3d Cir.1977)). Instead of looking to the factors endorsed by the Seventh Circuit, plaintiffs rely on the meaning of "harmless" as defined by a district court in the Middle District of Alabama: "[a] party's misconduct is harmless if it involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced." *Stallworth v. E–Z Serve Convenience Stores*, 199 F.R.D. 366, 369 (M.D.Ala. 2001) (citing *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 682 (D.Kan.1995)). Rather than abide by this narrower definition of "harmless", the Court will consider the factors mentioned by the Third Circuit in *Newman* and the importance of the evidence to MBUSA's summary judgment argument.

### 1. Prejudice

MBUSA argues that plaintiffs are not prejudiced by LaSpada's affidavit because the information he provides was previously disclosed to plaintiffs in one of MBUSA's earlier responses to plaintiffs' discovery requests. Plaintiffs complain that they are prejudiced by not being able to depose LaSpada, especially because the MBCC representative they deposed who was supposed to be knowledgeable about "the corporate relationship between the various DaimlerChrysler entities" did not know where MBUSA fit in on the organizational chart of DaimlerChrysler. (MBCC Dep. at 6–7, 36).

The earlier discovery response stated in essence that both MBC and MBUSA, LLC, the entities that currently exist, are subsidiaries of DaimlerChrysler North America Holding Corporation. The earlier disclosure says nothing about who owned or controlled MBCC during the class period other than that MBNA did not hold an ownership interest in MBCC during that time. LaSpada's affidavit reiterates what was disclosed earlier but adds more detail to that information. His affidavit explains more about the ownership of MBNA and MBCC by DaimlerBenz of North America Holding Company, Inc. during the class period. He also adds that at no time during the class period did MBNA hold or control any stock of MBCC or vice versa. While MBUSA argues that the information most pertinent to plaintiffs' argument against summary judgment was disclosed in the earlier discovery response, the Court finds this argument unpersuasive. It is not up to MBUSA to decide what information is most pertinent to plaintiffs' position. The Court will not speculate on how plaintiffs would have used the additional information disclosed in LaSpada's affidavit or what other information plaintiffs might have uncovered had they deposed him on this issue. That plaintiffs would have questioned a representative from MBUSA on this issue had MBUSA disclosed the names of persons with such relevant information amounts to prejudice to plaintiffs in the eyes of this Court.

### 2. Ability to Cure Prejudice

MBUSA further contends that plaintiffs could have cured any prejudice by seeking an extension of time to respond to the motion for partial summary judgment so as to give

them time to depose LaSpada. Plaintiffs counter that their ability to take such action does not render MBUSA's failure to disclose harmless. They further argue that the only way to cure any prejudice at this point would be to allow plaintiffs to depose LaSpada and submit a supplemental brief. *See In re Indep. Serv. Org. Antitrust Litig.*, 85 F.Supp.2d 1130, 1162–63 (D.Kan.2000) ("To cure any prejudice, the Court would need to let Xerox depose Dr. Garvin, supplement its expert reports and/or affidavits, and submit a supplemental brief on its motion for summary judgment and in opposition to the CCS cross motion."). Plaintiffs complain that taking such remedial action would impose additional costs on plaintiffs and further delay other merits discovery, which is why plaintiffs were against having the *Illinois Brick* issue briefed separately. Plaintiffs cite *Astrazeneca AB v. Mutual Pharmaceutical Co.*, for the proposition that reopening discovery would only reward MBUSA for its failure to disclose. 278 F.Supp.2d 491, 507 (E.D.Pa.2003) ("To require Plaintiff to re-open depositions and attempt to secure fact discovery (and expert opinions), at this time, on a theory of invalidity based on the German '106 patent, would be decidedly unfair."). The Court agrees that harmlessness should not be defined by whether the aggrieved party has the ability to spend more money and resources to scramble through an unanticipated deposition. That is not to say, however, that any prejudice to plaintiffs could not be cured by allowing them to depose LaSpada and file a supplemental brief. If the expense is an issue, the Court could require that MBUSA bear the costs of the deposition as a sanction for failing to disclose the information earlier, rather than excluding the affidavit altogether. *See Fitz, Inc. v. Ralph Wilson Plastics Co.*, 174 F.R.D. 587, 591 (D.N.J.1997). While the Court concurs with plaintiffs in that it is loathe to delay this case any further, that is not to say that MBUSA's failure to disclose can not be cured.

### 3. Likelihood of Disruption

As for whether MBUSA's failure to disclose the identity of LaSpada is likely to disrupt the trial, this factor is irrelevant here given the stage of the litigation. The Court

is also not concerned that MBUSA's violation will infringe on the schedule this Court has set out for hearing oral arguments on defendants' motion for partial summary judgment.

### 4. Bad Faith or Willfulness

With regard to whether MBUSA's failure to disclose the identity and knowledge of LaSpada was in bad faith or willful, plaintiffs argue that MBUSA's repeated failure to disclose information, particularly when asked to do so, satisfies this factor. Plaintiffs rely on *Ventra v. U.S.*, to support this proposition. 121 F.Supp.2d 326, 332 (S.D.N.Y.2000) (finding plaintiff acted in bad faith in not disclosing identity of affiant because plaintiff testified after being directly asked that the doctor was not treating her injuries and plaintiff's counsel repeatedly instructed his client not to answer any question relating to the doctor's treatment of plaintiff). Plaintiffs argue that MBUSA's failure to provide meaningful responses to their interrogatories shows bad faith on MBUSA's part. The Court agrees with this assertion. MBUSA's amended responses to the interrogatories were served on plaintiffs near the end of the discovery period. Those responses did not mention LaSpada or his knowledge, even though it is clear that MBUSA would have had such information at the time the responses were served given that he is an employee of MBUSA, LLC. Moreover, MBUSA would have known when it served its original answers to plaintiffs' interrogatories that someone from MBUSA, including LaSpada, possessed information regarding the relationship between MBUSA and MBCC. That said, MBUSA has had several opportunities to disclose the identity of LaSpada and the subject matter of his knowledge. MBUSA's failure to disclose such information on any one of these opportunities demonstrates willfulness at a minimum.[2]

### 5. Critical Evidence

The last factor the Third Circuit has directed district courts to consider is the importance of the evidence to the proffering party's case. There can be no doubt that LaSpada's affidavit is critical with regard to

---

2. See comment in footnote 1.

whether the "own or control" exception applies to the *Illinois Brick* rule. His affidavit deals with the relationship between MBNA and MBCC during the class period.

*Weighing the Factors*

■ ▇▇▇ Considering the factors overall, the Court concludes that MBUSA's failure to disclose the identity of LaSpada or the subject matter of his knowledge was not harmless or substantially justified. The factors show that plaintiffs are prejudiced by this discovery violation and that MBUSA was willful in its failure to disclose such information. Examination of the other factors, however, leads the Court to conclude that LaSpada's affidavit should not be excluded. The ability to cure the violation combined with the importance of the information and the minimal disruption it is likely to cause persuades this Court to impose a different sanction on MBUSA. Rather than exclude the evidence, the Court concludes that plaintiffs should be given the opportunity to depose LaSpada regarding the relationship between MBUSA and MBCC. To prevent any changes in the current schedule for oral arguments in late January, this deposition shall take place by January 14, 2005. The costs of such deposition, but not any attorneys' fees associated therewith, will be borne by MBUSA. The logistics of filing supplemental briefs shall be determined upon conferring with the Court. By allowing this additional discovery to take place in an expedited fashion, plaintiffs are given the opportunity to remedy any prejudice to them at the expense of MBUSA while avoiding delays and the exclusion of important evidence.

## CONCLUSION

Plaintiffs' Motion to Strike the Affidavits of Anthony P. LaSpada and R. Craig Romaine is DENIED.

## ORDER

It is on this 6th day of January, 2005,

ORDERED that Plaintiffs' Motion to Strike the Affidavits of Anthony P. LaSpada and R. Craig Romaine is DENIED;

Plaintiffs shall take the deposition of Anthony LaSpada by January 14, 2005, the costs of which shall be borne by MBUSA; and

The parties shall confer with the Court to set up a schedule for filing supplemental briefs as a result of the deposition of Mr. LaSpada.